# WATERS *vs.* DASHIELL.

If a deed which is fraudulent as against creditors, be executed by one, who afterwards becomes an insolvent applicant, the trustee of such insolvent, is the person to impeach such deed, and claim the property for the use of the creditors of the insolvent.

If any fraud exists in a transaction to which the insolvent was a party, the trustee may take advantage of it.

In questions of fraud, any fact, however slight, if at all relevant to the issue may be admitted in evidence.

If any portion of the evidence which is offered, be admissible, the court err in rejecting the whole.

Where the personal property is delivered with the deed, it is not necessary to record it, and to such a case the act of 1846, ch. 271, does not apply. Whether the property was delivered or not, is a question of fact for the jury, on the evidence offered by the parties.

APPEAL from Somerset county court.

The appellee sued in trover, the appellant, to recover the value of a slave, which was conveyed to the appellee by a certain Kennerly, the bill of sale bearing date 14th May 1849. The bill of sale has not the affidavit of the grantee, required by the act of 1846, ch. 37.

On the 28th August 1849, Kennerly applied for the benefit of the insolvent law. The appellant was appointed the trustee, gave bond, and the insolvent applicant executed to him the usual deed. The trustee took possession of this negro, with other property claimed by the insolvent, and sold her by virtue of an order of the county court.

The appellee made a demand of the negro, in controversy, and having instituted this suit, on the trial of it, proved the execution of the bill of sale. The appellant, thereupon, offered in evidence the record of the proceedings in the matter of the insolvent's petition, and also offered proof, that at the date of the bill of sale, the insolvent was largely indebted to sundry persons, who remain his creditors.

The case was argued before ECCLESTON, MASON, and TUCK, J.

By *Waters* and *Done* for the appellant, and *Crisfield* for the appellee.

*Waters* for the appellant.

The evidence which was rejected, was a part of it proper to show that there was no delivery of possession, and was admissible to prove the deed to be void by the statute of Elizabeth.

The bill of sale was given in May 1849, and the party became an insolvent applicant in August of the same year.

The act of 1846, ch. 271. *Roberts on Frauds, p.* 2. *Stat.* 13 *Elizabeth, ch.* 5, *sec.* 2.

The question here is, whether the trustee can impeach this deed, on the ground, that it is void as against creditors?

The acts of Assembly here to be noticed, are, act of 1805,

ch. 118, sec. 2, in relation to the appointment of said trustees.

Act of 1827, ch. 70, sec. 1, as to trustees.

Act of 1812, ch. 77, sect. 6, whereby the property is made to pass without deed.

It is contended on the other side, that the trustee takes under the deed of the insolvent applicant, and thence it is inferred, that because the insolvent applicant, himself, cannot impeach the deed, it is not in the power of the trustee to impeach it. This, by no means, is the legal conclusion. Such, certainly, is not the law of England, in cases of bankruptcy. 2 *Vez., J.,* 244. 2 *Wils.,* 47. 1 *Atk.,* 93. 2 *Bibb,* 204.

So in the case of an insolvent, to be found in 11 *Mees. and Wel.,* 530, it was said the assignee of an insolvent debtor represents the creditors for all purposes; and if any fraud exists in a transaction to which the insolvent is a party, the assignee may take advantage of it. A deed which is void as against creditors, is void also as against those who represent creditors. 1 *Am. Leading Cases,* 57, notes by Hare and Wallace.

In 6 *Rand.* 742, it is said, that the sheriff, (who was assignee of the insolvent,) could set aside a fraudulent deed.

*2nd Wharton,* 240, *Englebert vs. Blanjot,* a fraudulent grantor holds the title for the use of his creditors. See, also, 1*st Md. Ch. Dec.,* 507. 5 *Gill,* 138, *Alexander vs. Ghiselin.*

4 *Har. and Johns.,* 271, *Farrow and others, vs. Teakle,* a case to which the adverse counsel has given us a reference: it was before the act of 1810, ch. 160, and was a proceeding under the act of 1794, ch. 80, sec. 10. There was certainly in that case, no positive proof, that at the time of executing the deed, sufficient property was not left in the hands of the grantor, to pay his debts.

On the part of the appellant it is insisted, that—

1st. The trustee of an insolvent, under the insolvent laws of this State, represents the creditors; is invested with their rights as to the property of the insolvent, and their remedies must be pursued through and by him; and hence:

2nd. The trustee may pursue any property, which the in-

58      v.1

solvent may have conveyed away, in fraud of the creditors whom the trustee represents.

3rd. The evidence offered was legal and competent, to show that the bill of sale to Dashiell, the appellee, was fraudulent and void, under the act of 1846, ch. 271, and the statute of 13th Elizabeth, ch. 5.

On the first and second points, the appellant will refer to and rely on the following authorities:

*Acts of* 1805, ch. 110; and 1812, ch. 77. *Worseley vs. De Mattos,* 1 *Burr.,* 467. *Wilson vs. Day,* 2 *Burr.,* 827. *Hague vs. Rolleston,* 4 *Burr.,* 2174. *Alderson vs. Temple,* 4 *Burr.,* 2235. *Linton vs. Bartlett,* 3 *Wils.,* 47. *Harman vs. Fisher, Cowp.,* 117. *Doe vs. Rontlege, Cowp.,* 705. *Anderson vs. Maltby,* 2 *Ves., Jr.,* 244. *Walker vs. Burrows,* 1 *Atk.,* 93. *Grimsby vs. Ball,* 11 *Mees and Wels.,* 531. *Shirley vs. Long,* 6 *Randolph,* 735. *Edwards vs. Coleman,* 2 *Bibb.,* 204. *Englebert vs. Blanjot,* 2 *Whart.,* 240. 1 *Am. Leading Cases,* 57, &c. *Cole vs. Albers and Runge,* 1 *Gill,* 412. *Alexander vs. Ghiselin,* 5 *Gill,* 138. *Atkinson vs. Phillips,* 1 *Maryland Ch. Rep.,* 507. *Gatchell vs. Reynolds, Decr.,* 1837.

On the third point, they refer to and rely on the *act of* 1846, *ch* 271. *Stat.* 13 *Elizabeth, ch.* 5. *Roberts on Frauds, pp.* 1 to 12.

*Crisfield* for the appellee.

The bill of sale offered in evidence, is conceded to be regularly executed, except, that there is no affidavit, that the consideration expressed therein, is true and *bona fide,* as required by the act of 1846, ch. 271.

The defendant, with a view to avoid the said bill of sale, under the act of 1846, ch. 271, and its supplements, and under the statute of 13 Elizabeth, and to prove he was trustee of Henry Kennerly, an insolvent petitioner, offered in evidence, the record of proceedings, in the matter of his insolvency, and further offered evidence to show, that said Kennerly, at the date of said bill of sale, was, and at the date of his insolvent petition, continued to be, largely indebted to *sundry*

*persons.* To the admissibility of which evidence, to show that said bill of sale was not valid, under the act of 1846, ch. 271, and its supplements, and to avoid the same under the statute of 13 Elizabeth, the plaintiff objected; and the court sustained the objection, and refused to allow the said evidence to go to the jury, for the said purpose: and this appeal is prosecuted, for the purpose of reviewing that decision.

By the record, it appears, that Henry Kennerly applied for the benefit of the insolvent laws, on the 18th August 1849, and that he was, at that time, indebted largely to sundry persons, named in his schedule; but it does not appear that the defendant was one of them, or that any thing was due him then, or at any time.

The appellee insists, that the refusal of the court below, to allow said evidence to go to the jury, for the purpose of avoiding the bill of sale, under the act of 1846, or under the statute of 13 Elizabeth, was right, and ought to have been affirmed by this court:

1st. Because the appellant, claiming said slave, only as the trustee of the insolvent, is not a person having a right to ask, that said bill of sale shall be set aside on either of said grounds, for his benefit; and

2nd. If he was, the facts offered in evidence are irrelevant, and not sufficient in law to support the conclusion sought to be deduced from them, and have no tendency to prove the same; and were for that reason properly rejected.

*1st Point.* By an examination of the record, it will appear, that the defendant offered the evidence, which the court rejected *as evidence per se.* He did not propose to connect it with any thing else; but he relies on it, unsupported and unconnected with other facts, to establish the conclusion desired. This court must so consider it. It is quite possible that, connected with other facts, which might be imagined as one link in a great chain of proof, it might be evidence. But this court cannot travel out of the record, and traverse the regions of conjecture; it must review the judgment of the court below, as made, and say whether *that* judgment, under

the circumstances in which it was made, was right. The record affords the only means of determining what those circumstances were; and this court, placing itself in the predicament, as disclosed by the bill of exceptions, in which that court was, is to say, whether what that court did, was right.

*Bearing this idea always in mind, as I trust the court always will,* I proceed to inquire, whether the appellant, claiming said slave, in no other mode than as the trustee of Henry Kennerly, the grantor in the bill of sale, is a person having a right to ask, that said bill of sale shall be set aside, by reason of any thing contained in the act of 1846, ch. 271, and its supplements; or by reason of any thing contained in the statute of 13th Elizabeth.

The act of 1846, ch. 271, provides, "that no deed of mortgage, or bill of sale, shall be valid and effective, *except as against the mortgagor or mortgagors, grantor or grantors,* unless there be endorsed thereon an affidavit of the mortgagee or mortgagees, grantee or grantees, &c., that the consideration set forth in such deed of mortgage or bill of sale, is true and *bona fide,* as therein set forth." The only supplement to this act, is the act of 1847, ch. 305, which provides, that the affidavit may be made at any time before recording, and before any judge, &c. This supplement is not material to the question under discussion.

Under the act of 1846, ch. 271, the bill of sale is valid against the grantor, although there be no affidavit endorsed thereon, and of necessity good also against those claiming under him, by subsequent title, *for otherwise a fraudulent grantor, might always invalidate his own deed by a new conveyance.* So far as he is concerned, the bill of sale passes out of him all the property he had, leaving nothing on which his subsequent deed could operate. His grantee must therefore be in no better condition, unless he can shew, that a fraud has been contrived to deceive and defraud *him;* and if that can be shown, the first deed would be set aside, although it might have the required affidavit.

Waters *vs.* Dashiell.

The appellant in this case claims as the trustee of the insol-vent; his title is founded on the deed of the insolvent; and unless it can be shown, that he has rights superior to an or-dinary grantee of the insolvent, he must be concluded by the prior deed. *If the bill of sale is void as to him, by force of the act of 1846, ch. 271, it can only be so on the ground, that the insolvent system of this State invests the trustee with pow-ers and rights, superior to those granted by the insolvent's deed to him.* If he claim under the deed of the insolvent, he can acquire only what the insolvent had the power to convey, and his right cannot be enlarged by force of the act. If he claim rights greater and superior to what the insolvent had the power to convey, his title must be found in the insolvent system itself, or it does not exist. I *shall* contend that the trustee's title is derived purely from the insolvent's deed; that he has no title except what the insolvent can grant; *and that what the insolvent could not convey, the trustee cannot take.*

The evidence rejected was offered "to avoid the bill of sale, under the statute of 13th Elizabeth," and "the court refused to allow it to go to the jury for that purpose."

No question is raised on the statute of 27 Elizabeth, and none can be, for that statute does not apply to conveyances of personal property. 7 *H. & J.,* 227.

Was the evidence as offered, admissible to show that the bill of sale was void, under the statute of 13th of Elizabeth? A solution of this question requires an examination of that statute, which will be found at large in "*Roberts on Fraudu-lent Conveyances,*" on the first page. It declares "that all gifts, grants, conveyances, &c., had or made, through malice, fraud, covin, collusion or guile, to the end, purpose and in-tent to delay, hinder or defraud creditors, and others, of their just and lawful actions, debts, &c., shall be deemed and taken *(only as against that person, &c., whose action, debts, &c., are disturbed, delayed, hindered or defrauded,)* to be clearly and utterly void, frustrate and of none effect;" and by the sixth section, there is a saving in favor of conveyances, on good consideration, and *bona fide* made, to persons not having at

the time of such conveyance, any manner of notice, or knowledge of such covin, fraud or collusion.

The object of this statute is to protect the creditor from fraud. It does not vacate the conveyance for all purposes, but only as against *the creditor*, whose debt is hindered and delayed. It binds the grantor, and all persons claiming under him. The appellant was not a creditor of Kennerly, at the date of the bill of sale, or at any other time, and does not claim as such. He is the mere trustee and claims by the deed of the insolvent, and by virtue of the insolvent laws.

The question then is, under the insolvent system of Maryland, has the trustee the right to have vacated for his benefit, the prior conveyance of the insolvent, good against such insolvent, and not made to a creditor, with a view or under the expectation of becoming an insolvent debtor, and with the intent thereby of giving an undue and improper preference to such creditor?

The insolvent system of Maryland, is a scheme of humanity; it regards the debtor as an object of commisseration, and grants to him an act of benevolence, for the sake of personal liberty. The original act establishing the system, is called, "An act for the *relief* of sundry insolvent debtors;" and the application of the law to individuals, is called "granting the *benefit* of the insolvent laws."

Between systems so different as the bankrupt system of England, and our insolvent laws, in their purposes and objects, there can be no analogy; and all rules of construction drawn from the adjudications in bankruptcy, applied to our insolvent system, only tend to mislead. The object of our system, the purposes of its enactment, the privileges of the insolvent, the rights, power and authority, of the trustee, and the duty of the court, are all set forth and defined in the law itself; and we can neither enlarge nor limit these, by any reference to what may have been done under another and different system.

Bankruptcy is regarded as a crime. The assignees take by operation of law. No deed is necessary to pass the property

out of the bankrupt; the law divests his rights and vests them in the assignees, who are expressly made the trustees of the creditors, upon the bankrupt committing an act of bankruptcy. Among others, any gift or conveyance fraudulent under the statute of Elizabeth, is an act of bankruptcy, which, of course, overreaches and avoids the conveyance itself. And by express statute, voluntary and fraudulent transfers of property are annulled, and the commissioners in bankruptcy authorised to sell what is so attempted to be conveyed. *Eden*, 244, 250.

The trustee under our insolvent system is invested with no such power or authority. By the act of 1805, ch. 110, which is the foundation of our system, the insolvent's estate does not reach the trustee by operation of law, but through the insolvent's deed, and no general or express power is given to him, to vacate the insolvent's previous conveyances, as a fraud on the creditor.

The fourth, fifth, seventh and eighth sections of the act of 1805, only authorise the trustee to receive, to be administered for the creditors, what the debtor has the power to convey. No power is given to the trustee to sue for, recover or dispose of, any property, except that which was conveyed and assigned to him by the debtor; and there is nothing in these sections, or in any part of this act, which expressly, or, as I believe, impliedly authorises the trustee to sell, what has been previously conveyed in fraud of creditors, as the assignees in bankruptcy may do by virtue of express authority of the English bankrupt laws. *Eden*, 26, 27, 250, 251.

It is apparent that the trustee could, under the act of 1805, take only what the insolvent could convey; and it follows, that if the insolvent had executed conveyances, good against himself, his trustee is also bound. The only exception to this rule, is that created by the act of 1812, and other acts reaffirming the same rule. (See acts of 1816, ch. 221, and 1834, ch. 293, which are of force only in the city of Baltimore; and 1845, ch. 139, of general operation throughout the State.)

The act of 1827, ch. 70, declares, "that the judge or jus-

tice shall not grant a personal discharge to the said applicant, until the trustee shall give bond, &c., and until the applicant shall execute to said trustee a deed of conveyance for all his estate, &c., and until the trustee shall certify in writing, that he is in possession of all the estate of the applicant mentioned in his schedule." The eighth section is conclusive on the point in question, and shows that the trustee takes by deed of the insolvent, and takes only what he *does* convey; *a fortiori*, he takes only what the insolvent *can convey*.

It is therefore insisted, that according to any fair and legitimate construction of our insolvent system, the following propositions are established:—1st. That the trustee's title is founded upon, and limited by, the insolvent's deed. 2nd. That he takes nothing by operation of law, except property conveyed to a preferred creditor, in violation of the acts of 1812 and 1845. And 3rd. That he takes under the deed only what the insolvent had the right of possession of at the time of his application. And from these propositions the result is inevitable, that what the insolvent has previously disposed of by any transfer, deed or assignment, good and valid against himself, cannot pass to the trustee, unless it can be brought within the rule established by the acts of 1812 and 1845.

The acts of other States conferring powers on similar officers, and the judgment of courts of other States, on the measure of power conferred by a different system, afford no aid in determining the right and duty of trustees under our own. Such acts and such judgments are entirely foreign to the matter in discussion.

*2nd Point.* But if, for the sake of the argument, it be admitted, that the appellant, claiming as the trustee of the insolvent, has the right to maintain this suit, still it is contended, that the evidence was properly rejected, and the judgment of the court below, ought to be affirmed. The facts proposed to be proved, are irrelevant, and not sufficient in law to support, and, considered *per se*, have no tendency to prove the conclusion sought to be deduced from them.

The declaration, it will be remembered, is in trover, and the issue is "not guilty." The plaintiff below, to maintain his right to the slave, the subject matter of the dispute, having offered in evidence a bill of sale from Henry Kennerly, dated the 14th of May 1849, the defendant, to support the issues on his part, and to avoid the bill of sale, under the act of 1846, and the statute of 13th Elizabeth, and to show that he was trustee, offered Henry Kennerly's insolvent petition, dated 18th of August 1849, and the proceedings thereunder, and, that he was indebted to *sundry persons* at the date of said bill of sale, who still remained unpaid.

No objection was made to this evidence, to show that the defendant was trustee; but it was objected to, as inadmissible to show, that the bill of sale was not valid under the act of 1846, and to avoid it under statute 13 Elizabeth.

Of itself, how can it have any tendency to prove the facts necessary to avoid the deed, under the last named statute? Henry Kennerly, on the 14th of May 1849, executed a bill of sale to H. H. Dashiell, and applied for the benefit of the insolvent law in August following, and it is contended, that that isolated fact, avoids the bill of sale, under the statute referred to. He granted the slave in May, and three months afterwards, was a petitioner, *ergo*, the bill of sale is void. Was there ever a more illogical deduction? What possible tendency has this fact, by itself, to show that the bill of sale was designed to hinder, delay and defraud, creditors? The statute of Elizabeth, strikes at the fraud, and makes the fraudulent intent and collusion between the parties, the groundwork of vacating the deed. There must be an immoral intent, a design to defraud, shown, before it can be vacated; and both parties must participate in it; at least, the grantee must have knowledge of the fraud at the time of the conveyance, otherwise the deed is good. (See 6th sec. of statute of Elizabeth.)

Now how can the subsequent petition, presented in August, of itself, show such fraudulent intent and collusion in May? Again, the insolvent papers, contain no evidence or

statement of indebtedness on Kennerly's part, in May; it con-
tains a list of debts, which he owed *at the time of his petition*;
but it does not appear, that a farthing of those debts, were
due or created in May.   And even if it had, such list would
have been no evidence to charge *Dashiell*; because it is the
mere declaration of Kennerly, made after Dashiell's title ac-
crued, and not in his presence, and in a proceeding to which
he is no party.   As to him, a statement would have been *res
inter alios acta.*   I do not forget the general statement in the
exception of an offer, to show that Kennerly was, at the date
of the bill of sale, indebted to sundry persons, and that said
debts were still due; but that is too indefinite to be admissi-
ble, and can have no agency in determining any thing.   Who
are "sundry persons?"   How is it to be shown, that sundry
persons have not been paid?   Are they capable of contracting?
Can they give receipts and acquittances?   How is their hand
writing to be proved?   The court will at once perceive that
such testimony is too vague, uncertain and intangible to be
admitted, under any circumstances, or for any purpose.   It is
connected with nothing, and there is no means of giving it
certainty; and it cannot be invoked, to show that Kennerly
owed anything at the date of his petition.   The proposition
then is reduced to this, the fact that Kennerly petitioned for
the benefit of the insolvent law on debts then due, is offered in
evidence, to show that the bill of sale, executed by him three
months before, was designed in fraud of creditors; when
there is not a particle of proof, that at that time, he had any
creditors at all.   This is a proposition which the appellant
must successfully maintain, before this judgment can be re-
versed.

The rules of law with reference to the relevancy of evi-
dence are thus laid down by the writers on evidence.

"The rule excludes all evidence of facts which are incapa-
ble of affording any reasonable presumption or inference as
to principal fact or matter in dispute; and the reason is, that
such evidence tends to draw away the minds of the jurors
from the point in issue, and to excite prejudice and mislead
them."   1 *Greenleaf Evidence,* 59.

"Evidence must always be considered with reference to the subject matter to which it is applied. And it is material therefore, to consider the view with which particular evidence is offered, in order to determine whether it bears upon the point in issue. Evidence may be admissible in one point of view, though not in another." 1 *Phil. Ev.*, 169, *edition of* 1839. *Taylor vs. Williams*, 2 *Barn. and Adolphus*, 333.

"No evidence is admissible which does not tend to prove or disprove the issue joined." 1 *Starkie on Ev.*, 430, *(marginal.)*

But it may be said the proof offered was a link in a great chain of evidence ; and would have been connected with other facts, which would have shown its relevancy. To this I answer, that the record shows that the evidence was offered as evidence *per se,* and it discloses no design to connect with it anything else. If the appellant designed to connect other facts with it, he should have declared his design. The court cannot presume such intention; nor can it presume that other facts pertinent to the issue, existed at all. The court must determine the question upon the facts before it, and on those facts alone. It must be enabled to see the relevancy. This doctrine is maintained by a long and uniform train of decisions.

In *Weilder vs. the Farmers Bank of Lancaster*, 11 *Serg. and Rawle.*, 134, 139, 140, Mr. Justice Gibson laid down the rule in the following terms:

"The evidence, therefore, as it was offered, presented facts, which, isolated as they stand in the bill of exceptions, were altogether irrelevant. But the plaintiff contends that this may have been only a part of the chain of his evidence ; and that what was deficient, might afterwards have been supplied. If this were admitted, no court could, without error, ever reject evidence for irrelevancy, as there is no fact so entirely irrelevant, as to be incapable of being connected with the question, however remotely, by the intervention of a chain of possible circumstances. But the question is, how did the matter stand as it was proposed to the court? If it was

altogether irrelevant, the court might reject it, although it might not perhaps be error to admit it. If it would be relevant when taken in connection with other facts, it ought to be proposed in connection with those facts; and an offer to follow the evidence proposed with proof of those facts at the proper times. But the court is not bound to spend its time in an inquiry, which, from the showing of the party, can produce no possible results. Dislocated circumstances may doubtless be given in evidence, particularly if there be no objection to the order of time; but the proposal of the evidence, must contain in itself, by reference to something that has preceded it, or that is to follow, information of the manner in which it is to be legitimately operative."

The court is also referred to *Wilson's administrators, vs. Bowen,* 5 *Munroe,* 33. *Clarke vs. Beach,* 6 *Conn. Rep.,* 142. *Rowt's administrator vs. Kyle's administrator,* 1 *Leigh's Rep.,* 216, 223, 224, and to 2 *Phillips on Evidence, Cowen and Hill's Notes,* 434, 435, where the doctrine contended for, is fully sustained.

*Done* in conclusion.

That the deed itself is void, is against creditors, cannot be denied. Can the trustee impeach it?

The trustee takes under the law, rather than under the deed. Indeed, the deed itself conveys all that the party grantor can convey. If the party conveyed away the property in secret trusts, the title, then, is in him, and passes to the trustee.

If it was given away, then the creditor might execute and sell it. The plaintiff, then, must sell, what it is necessary to regard as the debtor's title. Surely he is to be considered as having some title for the benefit of creditors. If a creditor had relied upon this property, would it not be taken by the trustee, under the authority of *Alexander and Ghiselin?*

We are told that under the act of 1827, ch. 70, creditors may levy on the property not in the schedule, and it is said the trustee has a right to the property only in the schedule.

That act authorises a levy, but says nothing about a sale. At most, it only gives to the creditors a concurrent remedy with the trustee.   Both the deed and the acts of Assembly, which pass the title to the trustee, give to him all the property of the trustee, of every description.

The law says, it may be levied upon as it could have been prior to the petition.   When it is levied upon, the trustee could take it.

See *Beatty vs. Davis and others, December* 1850, as bearing on this case.

The trustee can proceed as well at law as in equity.   He is a trustee for the creditors, and may sue on legal claims.

Here the appellee sued the trustee, and in a court of law. Then surely he has a right to defend his title.   He is forced to impeach the deed, in maintenance of the rights of creditors.

It is said that the evidence of insolvency is not sufficient. See 2 *H. & J.,* 376.

The demand which was made of the negro, admitted the rightful possession of the trustee, and that shows that the possession was not delivered by the insolvent to the grantor in the deed.

Tuck, J., delivered the opinion of this court.

The appellee, claiming under a bill of sale from Henry Kennerly, instituted an action of *trover,* to recover the value of a negro woman from the appellant, who was in possession, and claiming title, as the trustee of Kennerly, under the insolvent laws.   The defendant offered evidence to shew, that the bill of sale was void as against the creditors of Kennerly, under the statute of 13 Elizabeth, ch. 5, and under the act of 1846, ch. 271, which requires an affidavit of the fairness of the consideration.   The testimony was rejected : the court being of opinion that it was not competent for the trustee to impeach the bill of sale on these grounds.

It is said, that because this deed is valid as against the grantor ; it is also good against the trustee, who derives his title under the deed from the insolvent ; and that the creditors

alone can avoid this instrument by proceeding against the grantee, as a trustee for their benefit. The effect of this view, would be, to give to the creditors an interest in a deed which the law pronounces to be void, as to them, and against which they claim. The interests of the grantee and the creditors will always be opposed, and hence, there is good reason for permitting the trustee to take the property, for the benefit of the creditors, whose rights might not be so well protected by another, having a strong motive to defeat their claims. If the property passed to the grantee, charged with an equity in favor of the then existing creditors, and was void, only to the extent of their claims, the grantee, himself, would be entitled to the surplus, after satisfying these debts. But is this the case? When a deed is set aside for fraud in fact, at the instance of creditors, who were such at the date of the deed, subsequent creditors have been allowed to come in, and participate in the fund. 2 *Bland*, 35, and the cases therein cited. 1 *Story's Eq.*, 361. *Ede vs. Knowles*, 2 *Younge and Collier N. R.*, 172, 178. Such deeds are said to be void, *ab initio*, and not to be recognised for any lawful purpose—not even as security for advances, and improvements made on the property by the grantee. 2 *Harr. and Gill*, 261, *Starke vs. Macdonald*.

The fact, that such deeds are void, as against existing creditors, shews that the title remains in the grantor for their use; and it is on this principle that the property may be seized and sold, after the deed, for payment of their claims. Under such a proceeding, the officer sells only what the creditors have a right to, yet the vendee takes the property by a title superior to that of the grantee, under the deed. If the property may be taken and applied, in this way, in satisfaction of creditors' demands, why may it not, in any other way, (by the insolvent laws, for instance,) be taken and applied to the same purpose? The argument of the appellee, that the trustee can take no more than the insolvent can convey, which he says, is nothing, (the deed being good as against him,) overlooks the design of the insolvent laws, as well as the true charac-

ter of the interest that creditors have, in property so situated. Our insolvent system, while granting relief to the debtor, also protects the creditors to the full extent of the property to which they may look for satisfaction of their claims. This is done by taking all his property out of his possession and control, and placing it in the hands of the law, by the agency of a trustee; and by giving to the trustee power to sue for, and reduce to his own possession, all the effects of the petitioner, which are liable for his debts. And so exclusive is this possession and control, that the trustee takes the estate free from the interference of the sheriff, mortgagees or others, having prior liens, subject, however, to all such liens, in the distribution of the trust funds: " The leading and general design of the insolvent system is, to insure a prompt and complete settlement of all the affairs of the party ; and to facilitate these objects, the law has wisely given to the trustee, the entire management of the estate, subject to the control of the court by whom he is appointed, charging him with the duty of paying off liens, incumbrances," &c. 5 *Gill*, 178.

One object of the system is to prevent confusion and possible conflict of jurisdiction, by an entire administration of the insolvents estate, in one court.

But the trustee does not claim as an ordinary purchaser, under the insolvent law. In such a case the grantee takes nothing. But here, he cannot be considered as voluntarily conveying their property, In fact it is no part of his design, to pass the title to the trustee for the benefit of the creditors, whom he has attempted to defraud by the previous assignment. But the trustee takes the property against the will of the grantor. The fraudulent intent is thus frustrated. The deed is made necessary to his discharge ; and without this he cannot obtain the benefit of the insolvent laws. The trustee becomes the mere officer of the law, designated not by the insolvent, but by the court, to effect what the law designs, and nothing more. And he takes all that remained in the petition, which the creditors themselves could claim, in any form of proceeding, for the payment of their demands. This is the

design of the law. It is the effect of the proceedings in in-
solvency. It is conceded, in argument, that if this were the
case of an assignee, claiming under the bankrupt laws, the
title of the appellant would be good. Looking to the frame
and design of an insolvent system, we cannot perceive that
there is any material difference between it and the proceed-
ings in bankruptcy, as far as the title to property so situated
is concerned. Although the act of 1827, ch. 70, requires a
deed to be executed, yet it would seem, that the title to all
the property of the insolvent, vests in the trustee by opera-
tion of law. 1805, *ch.* 110, *secs.* 4, 5. 1808, *ch.* 71, *sec.* 3.
1812, *ch.* 77, *sec.* 6. *Gardner vs. Lewis,* 7 *Gill,* 377. The
8th section of the act of 1827, ch. 70, subjects property not
included in the schedule, to execution and attachment; but
we apprehend that the effect of such a proceeding, would be
only to give the creditor a lien, and not to divest the right of
possession of the trustee. All the property passes to the
trustee subject to liens and incumbrances. 5 *Gill,* 178. 7
*Gill,* 377. This construction does not change, or in any de-
gree impair, the rights reserved to creditors under the statute
of Elizabeth, and the act of 1846. The design of these laws
was to secure the property, so conveyed, to the use of credit-
ors. Our insolvent system provides a person, whose duty it
is to represent creditors, and to assert their claim to property
fraudulently conveyed away by the petitioner.

We are not aware that this question has ever been express-
ly decided by the Court of Appeals of this State. There are
cases, however, in which it might have been raised, and we
think the recognition of the trustees right to sue, may be in-
ferred from the circumstance, that it has not been denied by
any court of the State, as far as we are informed, during the
long time that our system has been in operation. Most of
the decisions under our insolvent laws, have been made in
cases where the trustee sought to vacate fraudulent prefer-
ences, which our acts of Assembly declare to be void; and
the title vesting in the trustee under these acts, his right to

sue has not depended on the character of these deeds, in view of the statute of Elizabeth.

In *Kipp vs. Hanna, 2 Bland,* 24, the late chancellor, at the instance of a trustee, vacated a voluntary deed of the insolvent, in favor of his wife and children; it was there held, that all the property of the petitioner vested in his trustee, for the benefit of creditors, at the time of the application, and discharge; and the parties in possession, were held to account for the rents and profits.

In the case of *Gatchell, trustee of Uhler vs. Reynolds, et al.,* June term 1837, (not reported,) the notes of counsel taken by the reporter, shew that the deed was assailed as void under the statute, and also, as an illegal preference under the insolvent laws. It does not appear that the counsel for the grantees in the deed, questioned the right of the trustee to sue, though affirmed on the part of the appellant. No opinion was filed, but the decree of the chancellor was reversed, and the deed avoided. In 7 *Gill,* 369, *Richards vs. Swan,* a bill was filed by creditors against the grantees of Dent, to vacate his deed as fraudulent? At the hearing it appeared that Dent had petitioned for the benefit of the insolvent laws, and that Richards, one of the defendants charged with the fraud, was his trustee. The chancellor directed the case to stand over, with leave to make the trustee a party; which was done and the deeds vacated. Pending a bill in chancery filed by Winn and Ross and others, creditors of Jones, to set aside a deed as fraudulent, Jones became an insolvent petitioner, and Winn and Ross were appointed his trustees. They came in by petition, and prayed leave, by an amended or supplemental bill, to set out their title as such trustees. This petition was resisted, but the present chancellor allowed the bill to be filed. 7 *Gill,* 454, 456. It does not appear that any decision was made in the Court of Appeals, on these applications, but the proceedings in the chancery court indicate that the trustee was deemed a necessary party; and it would seem to have been quite useless, if, as is contended by the appellees coun-

60      v. 1

sel, the trustee has no interest, and the deeds can be vacated only at the instance of the creditors themselves.

In 4 *Gill & Johns.*, 23, a bill was filed by an insolvent's trustee to set aside two deeds, one of which was alleged to be void, because executed with intent to hinder and defraud creditors, (that is, against the statute of Elizabeth,) and the other as void under the insolvent laws. It does not appear that any question was raised as to the trustee's right to file the bill; the case in this court, however, was disposed of on a collateral point. See also the case of *Beatty vs. Davis*, December term 1850, where a bill was filed by the trustee, and his right to sue was not questioned. The assignee of an insolvent debtor represents the creditors for all purposes, and if any frauds exists in a transaction to which the insolvent was a party, the assignee may take advantage of it. A deed void as against creditors, is void also against those who represent creditors. 11 *Mees. & Wels.*, 531. 6 *Rand.*, 748.

In 2 *Wharton*, 240, the question arose in a case very much like the present; and chief justice Gibson held that the trustee might sue in his own name, as well as by reason of his title under the assignment by the insolvent, as by the operation of the insolvent laws in passing the title to the trustee.

It is also insisted on the part of the appellee that the proof was irrelevant and insufficient for the purpose for which it was offered. This court has decided at the present term, that where the property passes with the deed, it need not be recorded, and in such case the act of 1846, ch. 271, does not apply. *Bryan & Ferree vs. Hawthorn.* Whether the property was delivered or not, was a question for the jury on the evidence offered on that point.

In questions of fraud, any fact, however slight, if at all relevant to the issue, will be admitted in evidence, though the circumstances when combined must be so strong as to satisfy the jury of the fact sought to be established. 5 *Gill & Johns.*, 269. If any portion of the evidence objected to was admissible, the court were in error in rejecting the whole. *Budd vs. Brooke,* 3 *Gill*, 220. The pecuniary condition of

Kennerly at the date of the deed to Dashiell, the time of his application for the benefit of the insolvent laws, and that these debts were not paid, may have been material facts on the question of his intention in executing the deed. The insolvent papers were the best evidence that he could offer of the time of the application, and the parol evidence tended to prove the other facts.

*Judgment reversed and procedendo ordered.*