Carroll's Lessee *vs.* The Granite Manufacturing Company.

---

# Charles Carroll's Lessee, *vs.* The Granite Manufacturing Company.

A plaintiff in ejectment, offered to prove by a witness, who was not *hisa gent* nor authorised by him to make the statement, that he informed the defendant's agent and workmen, when digging the foundation of defendant's building, that they were *over their lines* and on the *plaintiff's land.* HELD :

Carroll's Lessee, *vs.* The Granite Manufacturing Company:

That this statement being the declaration of a third party, a stranger to the controversy, and a mere volunteer, was clearly inadmissible, and if admitted could not in any manner properly affect the issues in the cause.

In an action of ejectment, a witness, though sworn on the survey, cannot prove the *location* of any object located on the plats, unless it appears from the plats and explanations, that He had pointed it out to the surveyor:

A court, when called on to determine the legality of a *question*, propounded to a witness under oral examination, must decide upon it in *its entirety*; and if *any part* of the question is illegal, the *whole* must be overruled.

The obligation is on the party propounding the question; to show that it is free from legal objection, and the *onus* does not rest either upon the *court* or the party objecting, to separate *that part* of it which may be *legal* from that which is *illegal*.

But when testimony is *admitted;* and an application is made to the court to *exclude it,* then the *onus* rests upon the party making the application, to confine his objection to *that portion* of the evidence which is *illegal.*

So when an offer is made, of a mass of evidence, complex in its character, and the *whole* of it is objected to, if *any part* of it is admissible, it is error to exclude the *whole.*

In a deed, conveying a tract of land, was this *exception:* "saving and excepting *a small part* of the said piece or parcel of land hereinbefore firstly conveyed, *upon which the rolling mill improvements now in part stand.*" There were *three separate buildings* constituting *one establishment,* for the manufacture of iron; a rolling mill; a slitting mill and a puddling mill, and the whole together were commonly called "*The Rolling Mills.*" HELD:

1st. That this exception is not confined to the land on which *one* of these buildings, the *rolling mill* proper, in part stood, nor to the ground actually covered by *all* of them, but embraces all the ground covered by *any improvement* connected with the *whole establishment,* and necessary or convenient for its use; and actually used in connection therewith.

2nd. That any *structure* made by the expenditure of labor or money, by the owners of the rolling mills; intended to make the same more useful or valuable, and actually used in connection therewith, and visible to the eye, at the date of the deed, is an *improvement* within the meaning of this exception.

3rd. That the phrase, "*now in part stand,*" does not confine the improvements meant; to such as were *erected* or *elevated,* but, of the land conveyed, that part is within the exception, whereon any of the rolling mill improvements were; at the date of the deed, *situated,* or *placed* or *remained.*

The rule, that in construing deeds, they must be taken most strongly against the grantor, and in favor of the grantee; is well established, but is only to be resorted to when the words of the deed are doubtful in their meaning, or susceptible of more than one construction.

APPEAL from the Circuit Court for Baltimore county.

*Ejectment* brought by the appellant, to recover a small piece of land described on the plats filed in the case, and in the possession of the appellee. There is no dispute as to title, the controversy being whether the land in question is embraced in the *third exception*, contained in a deed to Carroll from the Union Bank of Maryland, dated the 30th of October 1844. This deed conveys to Carroll part of a tract of land called "West Ilchester," by metes and bounds, which include the land in dispute, but from the operation of that deed three parcels are *excepted*, the third *exception* being as follows: "Thirdly, saving and excepting a small part of the said piece or parcel of land hereinbefore firstly conveyed, upon which the rolling mill improvements now in part stand."

The defendant pleaded *non cul*, on which issue was joined, and took defence according to pretensions, as they shall appear to be laid down on the return of the warrant of resurvey. At the trial the plaintiff stated his pretensions, and the defendant took defence. The question thus raised was, whether the plaintiff had truly located this *third exception* in the deed, or whether its true location is not the land for which the defendant took defence?

*1st* and *3rd Exceptions.* The plaintiff proved by William Dawson and George Ellicott, that they knew the lines which separated the land of the granite company from that of the plaintiff, and that when the workmen were digging the foundations of the granite factory, they informed the workmen and Mr. Lansdale, the company's agent, that they were over their lines and on Carroll's land, both said witnesses having previously stated that they were not at the time of this conversation, the agents of Carroll, nor authorised by him to make such statements. To the admissibility of which evidence, as to what was said by these witnesses, to the workmen and agent, the defendant objected, which objections the court (PRICE, J.) sustained, and to these rulings the plaintiff excepted.

*2nd Exception.* The plaintiff, for the purpose of proving the position and character of the *coke oven*, asked of Evan T.

Ellicott, whether he was not well acquainted with the lands described on the plats, and had not been sworn on the survey and examined as a witness to the *run-out furnace*, and whether he did not know from his knowledge of the grounds and the improvements thereon, and their relation to said furnace, where the said *coke oven* stood, and what was its character and condition? The defendant objected to the witness being examined in relation to said *oven*, on the ground that he had not been examined on the survey, as to the spot where it had stood, nor had his attention been called thereto. This objection the court sustained and the plaintiff excepted.

*4th Exception.* (The evidence given in this exception is sufficiently stated in the opinion of this court.) Upon this evidence the plaintiff asked the court to instruct the jury, that if they find from the evidence, that the outer boundaries of the deed from the Union Bank, are truly located in the plaintiff's first location, and that the rolling mill house is truly located, and that it stands in part upon the small piece of land described in the plats and explanations as, &c., then the plaintiff is entitled to recover according to his pretensions, and in conformity with the true construction of said deed.

The defendant also asked an instruction, that if the jury find that *the improvements* offered in evidence were made by the owners of the rolling mill, and were used in connection therewith, and that at the date of the deed from the Union Bank to Carroll, the said improvements stood upon the land for which the defendant has taken defence, then, by the true construction of said deed, the plaintiff is not entitled to recover.

The court rejected the plaintiff's prayer, and granted that of the defendant, and to this ruling the plaintiff excepted.

*5th Exception.* The plaintiff then, upon the evidence contained in the fourth exception, asked the following instructions to the jury:

2nd. If the jury find, from the evidence, the facts stated in the plaintiff's first prayer, and also that the filling up and wharfing of the ground between the margin of the stream and Carroll's eastern line, was made for the purpose of protecting the dam of the owners of mills below from injury, by the

washing of ashes and cinders into the mill-pool, and when the bank was thus made, it was occasionally used by the owners of the rolling mills as a place of deposit for scrap iron and other refuse, when the mills were in operation, and that, at the date of the deed to Carroll, the use of the rolling mill was, and had been from the year 1841, abandoned, and the establishment as a rolling mill entirely broken up as stated in the evidence, then they are at liberty to find that the plaintiff's location of the third exception in said deed is the only true one.

3rd. If the jury believe the testimony of George Ellicott, and find therefrom that there were three mills, two of which were near to, and the other in part stood upon, a small piece of land embraced in the lines of the deed to the plaintiff, and that the upper or northern mill, alone, was called and known by the name of the rolling mill, in contradistinction to the others, and was separated from them upwards of thirty feet, and not under the same roof, and find from the evidence, that it was this rolling mill which in part stood within the lines of said deed, then, according to the true construction of the terms, "rolling mill improvements" therein used, they refer only to the improvements connected with that mill, and cannot be referred to those connected with the other two mills; that there is a distinction between one and three; and that only one rolling mill improvements are mentioned in the third exception of said deed, and that the improvements of the three mills cannot be embraced in these terms.

4th. That it was the province of the jury, in considering the facts referred to in the defendant's prayer, and if they believe from the evidence, that at the date of said deed, the logs on the wharf had rotted away, and that the coking furnace had become a mere ruin, so as to encumber the ground with a heap of rubbish, which was not removed because it would not pay the expense thereof, and that all use of the coke furnace had ceased, because of its worthlessness and decay, ten years before said deed, and all use of the wharf had also ceased several years before said deed, then it is for the jury to say, whether they were existing improvements or not at the

date of said deed, and if they find that they did not exist as improvements at the date, then the jury are not bound to find for the defendants, though they may find from the evidence that said wharf and coke oven were, in long years past, originally put there by the owners of the rolling mills, and used in connection therewith.

The court rejected each and all of these prayers, and to this ruling the plaintiff excepted.

*6th Exception.* While the case was under argument before the jury, the counsel for the defendant offered the following prayer, to be added as a qualification of his first prayer: That any structure made by the expenditure of labor or money, by the owners of the rolling mills, on the property in controversy, intended to make the same more useful or valuable, and actually used in connection therewith, and visible to the eye, at the date of the deed from the Union Bank to Carroll, are improvements within the true construction of said deed.

This prayer the court granted, and to this ruling the plaintiff excepted, and the verdict and judgment being in favor of the defendant, appealed.

The cause was argued before Le Grand, C. J., Eccleston and Bartol, J.

*I. Nevitt Steele* and *Grafton L. Dulany,* for the appellant:

1st. As to the construction of the exception in the deed. The principles governing its interpretation, are · 1st. That every word in it should be so construed as to have its full meaning and application, and no more. *Wigram's Maxims,* 10, in *2 Lib. of Law & Eq. 4 Barn. & Adol.,* 799, *Richardson vs. Watson.* 2nd. That if the language of the exception be doubtful, it ought to be construed most strongly against the grantor, and most favorably to the grantee. Even to the extent of permitting the grantee to elect under which construction he will claim. 12 *Eng. C. L. Rep.,* 383, *Bullen vs. Denning.* 2 *H. & J.,* 112, *Hall vs. Gittings.* 3 *Johns.,* 375, *Jackson vs. Hudson.* With these principles in view it is insisted, that this exception is confined to that small triangular

piece of land within the outlines of Carroll's deed, on which the stone walls and building of the rolling mill stand now, and stood at the date of the deed. The words are, "saving and excepting a small *part*," that is *one*, not *two* or *three* small *parts*. Again, "on which the *rolling mill*" (in the *singular*) "improvements" stand. There were *three separate* structures, one called the "*rolling mill*," another the slitting mill, and a third the puddling mill, and the whole were collectively known as the "*rolling mills*," (in the *plural*.) When, therefore, the term "*rolling mill*," is used in this deed in the *singular*, it must mean the *separate building* which was known by that name, and not the *three* which were known as the "*rolling mills*." This is also more clear from the fact, that in another part of this same deed the "*slitting mill*" is spoken of, thus recognising a distinction between that mill and the "rolling mill," and showing that the grantor knew the difference between the two. Again, "on which the rolling mill improvements in part *stand*." An improvement, therefore, to come within this description must be *standing*, that is, *erected, elevated*, existing, and used at the date of the deed. If these views are correct, it follows, that the prayers on the part of the plaintiff should have been granted, and those of the defendant rejected.

2nd. The witness, Ellicott, who was sworn and examined on the survey, though not then examined as to the *coke oven*, was competent to prove its location, or was, *at least*, competent to prove its *character* and *condition*. 5 *Md. Rep.*, 260, 280, *Armstrong vs. Risteau. Dorsey on Ejectments*, 62. 1 *H. & G.*, 443, *Wall vs. Forbes.* If *any part* of the testimony was admissible, it was error to reject the whole. 3 *Gill*, 220, *Budd vs. Brooke.* 7 *Md. Rep.*, 582, *Pegg vs. Warford.*

3rd. It is also insisted, that the evidence offered in the *first* and *third* exceptions ought to have been admitted.

*John Prentiss Poe* and *Geo. W. Dobbin*, for the appellee:

1st. This action is to recover a small piece of land, of no great importance to the plaintiff but of vast moment to the de-

fendant; for if the plaintiff's construction of the exception in this deed is sustained, it will compel the company to take down the wall of a large stone factory, which they have recently built, and cripple, if not entirely break up their establishment. What then is the meaning of this exception ? The *intent* of parties is the cardinal rule in the construction of this, as of all other written instruments. This reservation was undoubtedly made *for the benefit* of the Granite Manufacturing Company. It excepts from the grant previously made "a small *part*." *"A part"* means *less than the whole,* and does not always imply *singularity.* As for instance: "I give my son *a part* of my estate," which may consist of *several parcels,* and such a gift of *"a part"* can mean nothing more than *less than the whole,* and would be *a part* of each of the several parcels of which the estate consisted. But again, this *part* is to contain *"improvements,"* more than *one* of course. The several mills all constituted *one establishment,* known as the "rolling *mills,"* and the exception is of that part on which the "rolling mill *improvements,'* that is, the *improvements used* in connection with the entire establishment. The word, *"improvements,"* must be stricken out, if the construction on the other side is to prevail. By the conveyance of a *"mill,"* not only the land on which the building stands, but that *adjacent thereto,* so far as necessary to its use, and commonly used with it, will pass by implication, and the same rule prevails in construing an exception in a grant. 13 *Metcalf,* 114, *Forbush vs. Lombard.* See also 2ᵗ *Greenleaf's Cruise,* 265, and *note.* 1 *Sumner,* 500, *United States vs. Appleton.* 15 *Maine,* 218, *Maddox vs. Goddard.* 16 *Maine,* 63, *Moore vs. Fletcher.* We insist, therefore, that the true construction of this exception is that embodied in the prayers which were granted by the court below.

2nd. The testimony of Dawson and Ellicott, set out in the *first* and *third* exceptions, was clearly inadmissible, because it was *irrelevant.* The fact that these witnesses made such statements to the workmen, could not alter the rights of the parties as they stood, upon the true construction of this deed.

3rd. The testimony of Ellicott in the *second* exception, as to the *location* of the *coke oven,* was properly excluded, as he

Carroll's Lessee, vs. The Granite Manufacturing Company.

was not examined, nor had his attention been drawn to it on the ground, and its precise location constituted one of the main points in controversy. 8 *Gill,* 98, *Mitchell vs. Mitchell.* 1 *H. & G.,* 444, *Wall vs. Forbes.*

BARTOL, J., delivered the opinion of this court.

The record in this case presents for our consideration two questions of evidence; these form the subject of the first, second, and third bills of exceptions.

In the first and third exceptions, the plaintiff offered to prove by William Dawson and by George Ellicott, that when the foundations of the granite factory were being dug, they informed Lansdale, the agent of the manufacturing company, and the workmen engaged in digging, that they were over their lines and on Mr. Carroll's land; both the witnesses stated that they were not Carroll's agents, nor authorised by him to make such statement.

In our opinion this evidence was properly rejected by the court. It was the declarations of third parties, strangers to the matter, and mere volunteers; and the evidence, if admitted, could not in any manner properly affect the issues in the cause, and was therefore properly rejected as irrelevant.

The second exception is taken to the ruling of the circuit court, in sustaining the defendants' objection to a question propounded by the plaintiff to the witness, Evan T. Ellicott. The witness was called upon to state "where the coke oven stood, and what was its character and condition?" He was clearly imcompetent to prove the *location* of the "coke oven," because it does not appear from the plats and explanations, that he had pointed out to the surveyor the object located, as to which he was called to testify." *Mitchell vs. Mitchell,* 8 *Gill,* 102. See *Dorsey on Ejectment,* 62.

But it is contended by the appellant, that it was competent for the witness to testify as to the character and condition of the coke oven, and that a part of the question being legal, it was error to sustain the objection.

In *Whiteford vs. Burckmyer & Adams,* 1 *Gill,* 140, the court say: "Nor do we think, where a question is proposed

to be asked of a witness, which involves several distinct members, the court is bound to select from it such members as might be admissible, if unaccompanied by others with which it is connected, and say that such particular portions of the testimony are proper."

We concur in that opinion, and think that the court, when called on to determine the legality of a question propounded to a witness under oral examination, must decide upon it in its entirety. The obligation rests upon the counsel propounding the question, to show that it is free from legal objection, and the *onus* does not rest either upon the court or the party objecting, to separate that part of it which may be legal from that which is illegal.

After evidence has been admitted, and an application is made to the court to exclude it, then the *onus* rests upon the party making the application, to confine his objection to that portion of the evidence which is illegal. And the same rule applies when an offer is made of a mass of evidence, complex in its character, and the whole of it is objected to. In such case, if any part of it be admissible, it is error to exclude the whole. This principle is established by the case of *Budd vs. Brooke, 3 Gill,* 220. See *Waters vs. Dashiell,* 1 *Md. Rep.,* 455.

Without expressing any opinion, therefore, as to the legality of any part of the question propounded to the witness, it is sufficient for the purposes of the exception to say, that a part of it being illegal, it was properly overruled by the circuit court.

This brings us to the questions raised by the prayers, and presented in the 4th, 5th and 6th bills of exceptions. These involve the construction of the *third exception, or reservation* in the deed under which the plaintiff claims, which is in these words: "*Thirdly, saving and excepting a small part of the said piece or parcel of land hereinbefore firstly conveyed, upon which the rolling mill improvements now in part stand.*"

It is a concession in the cause, and the proof shows, that the piece of land in dispute is embraced within the lines of the property conveyed to the plaintiff, and unless it is covered by the exception, the plaintiff is entitled to recover.

The land excepted is "a small part" (of the piece or parcel firstly conveyed,) "upon which the rolling mill improvements now in part stand." There is evidence in the cause that there were three mills, which were separate structures standing several feet apart, the most northern of these was the rolling mill proper, in which alone the rolling of iron was performed, the others were the puddling mill and the slitting mill, and the whole together were commonly called *The Rolling Mills*.

The rolling mill proper, stood in part upon the land covered by the plaintiff's deed, on the small triangular piece designated on the plat by the letters A B C. This piece of ground is conceded by the plaintiff to be within the exception, and on his part it is contended, that by the true construction of the clause, its intent is thereby fully gratified, and that the defendant cannot claim any other piece as within the exception; First, because only one piece is excepted; and secondly, because the exception is confined to the part, whereon the building itself, called the rolling mill was erected. Neither of these positions is sound. The exception is not of one piece of ground, but it is of a part of what had before been conveyed; and if it be shown by the evidence, that the rolling mill improvements in fact, stood in part on several distinct and separate pieces of the land firstly conveyed, then each piece would be fairly within the exception.

The term, "*a part,*" has reference to quantity, as less than the whole, and properly construed, is not to be taken as meaning necessarily that the part excepted is in one piece or parcel. This is the usual and ordinary signification of the word; as when we say a part of Maryland is sandy, we are not to be understood as meaning that the sandy portion is to be found in one integral piece or parcel of the State's surface.

Nor is the exception to be confined to the ground actually occupied by the building, which was the rolling mill proper. The words are, "*rolling mill improvements;*" though the three mills were separate structures, there is evidence showing that they were all under the same management, had the same payroll, and were used in performing different parts of the same

process.   The slitting mill and puddling mill prepared the iron for the rolling mill.   "The iron went into one end of the establishment crude, and was carried through the various stages of manufacture through the others, before it was turned out as the completed article," and the whole was commonly known as "The Rolling Mills."   Nor do we think that the true construction of the clause in question, confines its limits to the ground actually occupied or covered by the buildings called the Rolling Mills.   It is more extensive, and embraces all the ground  covered by any improvement connected with the rolling mills, and necessary or convenient for their use, and actually used in connexion therewith.   This might embrace not only the three mills, but also the coke furnace and wharf, with the intervening ground, if the evidence showed them to be rolling mill improvements in the sense in which we have described.

It seems to us, that no more correct exposition of the law governing the construction of the clause in the deed could be given, than is found in the instructions given to the jury by the circuit court, and stated in the fourth and sixth bills of exceptions, they were as follows:

"If the jury find the facts stated in the agreement of counsel, and that the improvements offered in evidence were made by the owners of The Rolling Mills, and were used in connection therewith, and that at the date of the deed from the Union Bank to Carroll, the said improvements stood upon the land for which the defendant has taken defence, then, by the true construction of said deed, the plaintiff is not entitled to recover."   "And that any structure made by the expenditure of labor or money by the owners of The Rolling Mills, on the property in controversy, intended to make the same more useful or valuable, and actually used in connection therewith, and visible to the eye at the date of the deed from the Union Bank to Carroll, are improvements within the true construction of said deed."

The principle  announced in these instructions is sustained by an unbroken current of authorities.

See *Whitney vs.   Olney & others,* 3 *Mason,* 280.   In

13 *Metcalf*, 114, the court say: "The rule of construction is well established, that by the grant of a mill, the land under the mill and adjacent thereto, so far as necessary to its use and commonly used with it, will pass by implication. And the same rule of construction applies to an exception in a grant." See also 15 *Maine*, 218. 16 *Ibid*, 63. 3 *New Hamp.*, 190.

The views we have expressed are not in conflict with the rule of law, that, in the construction of deeds, they must be taken most strongly against the grantor, and in favor of the grantee.

This principle has been invoked by the appellant in support of his construction, and there is certainly no one better established. But that rule is only to be resorted to, when the words of the deed are doubtful in their meaning, or susceptible of more than one construction. In this case, we consider the words of the exception in the deed are free from uncertainty, and admit of but one interpretation. One more objection urged by the appellant in the argument remains to be considered. It is contended, that no improvements are meant by the deed, except such as were erected or elevated, and that it does not refer to such as had been abandoned, and were fallen into dilapidation and decay, or which were merely spread upon the surface for the purpose of filling up the wharf, or making the yard and ground, adjacent to the mills, more fit for the use and convenience of their occupiers. This argument is based upon the use of the words, "*now stand*," in the deed. To our minds the argument appears more ingenious than solid. The word *standing*, often signifies placed or situated; thus we say London stands on the Thames. And, in the clause before us, such we consider to be its true meaning. Of the land conveyed, that part is within the exception, whereon any of the rolling mill improvements then were situated, or placed, or remained.

What has been said, dispenses with the necessity of a more particular notice of the several prayers offered by the plaintiff below. We concur in the propriety of their rejection by the circuit court.

*Judgment affirmed.*

ECCLESTON, J., dissented.