# SARAH WILSON

*vs.*

# CLIFTON L. JARRELL, Executor, et al.

*Testamentary Provision by Husband—Election by Widow—Rescission—Issues from Orphans' Court.*

An agreement by testator's widow to accept the provisions of the will in her favor in lieu of dower or statutory rights, "provided I shall be given", the extra meat and lard on the farm, *held* to be subject to rescission by the widow upon being notified by the executor that she could not have the meat and lard.

pp. 566, 567

The facts averred in a petition filed in the orphans' court not being questioned or denied, and a letter referred to in the petition being before the court, *held* that there was no occasion for framing issues to be sent to a court of law for trial.

pp. 567, 568

*Decided January 12th, 1921.*

Appeal from the Orphans' Court of Queen Anne's County.

The cause was argued before Boyd, C. J., Briscoe, Thomas, Pattison, Urner, Stockbridge, Adkins, and Offutt, JJ.

*Joseph B. Seth,* with whom were *Seth, Shehan & Marshall,* and *Sidney P. Townsend* on the brief, for the appellant.

*Howard Bryant* and *J. H. C. Legg,* with whom was *James T. Bright* on the brief, for the appellee.

Thomas, J., delivered the opinion of the court.

Perry Wilson, of Queen Anne's County, Maryland, died some time in June or July, 1918, leaving a last will and testament, which was executed on the 11th of June, 1918, and

was admitted to probate in the Orphans' Court of that county on the 30th of July, 1918.

The will appointed Clifton L. Jarrell, of Kent County, Maryland, executor, and directed that all of his real and personal property should be sold, and after the payment of his debts and funeral expenses, including the cost of a tombstone, the balance of his estate should be distributed, in equal shares, to his widow, Sarah Wilson, and his seven children, subject to certain provisions as to the shares of two of his children, so that his widow should receive the same amount as each of his children "and no more." The will also declared that the provision therein for his widow was "in lieu of her dower rights" in his estate.

There was filed in the Orphans' Court of Queen Anne's County, presumably on the day the will was presented and admitted to probate (although the record before us does not show when any of the papers in the case were filed in that court) the following paper:

"July 23, 1918.

"I, Sarah Wilson, widow of the late Perry Wilson, hereby agree to accept the provisions made in his last will and testament for me in lieu of the dower or any other rights allowed or provided by the laws of the State of Maryland, provided I shall be given the extra meat now in the meat house on the farm whereon he died and the extra lard on same farm—that is, what may be remaining after running the farm for 1918.

"Sarah Wilson."

It appears from the record that about two months after the will was admitted to probate Sarah Wilson, the widow, received the following letter from the executor:

"Chestertown, Md., Nov. 20, 1918.

"Mrs. Sarah Wilson,

"Chestertown, Md., R. D. No. 1.

"Dear Madam:

"I deem it my duty to write you in reference to the paper you signed relating to the provisions made for

you by your late husband, Perry Wilson, in his last will and testament. In this paper, which is dated July 23, 1918, and filed in the Orphans' Court for Queen Anne's County, Maryland, on July 30, 1918, you agreed to accept the provisions made in said will and testament for you in lieu of dower or any other rights allowed or provided by the laws of the State of Maryland, provided you should be given the extra meat then in the meat house on the farm whereon your late husband died and the extra lard on same farm that may be remaining after running the farm for 1918. Now, as executor of the last will and testament of your late husband, the said testator, I have no authority to give you this meat and lard, especially when I am informed that at least some of the heirs are claiming that it belongs to them or to the estate; therefore, in addition to the verbal notice heretofore given you, I now give you written notice that no part of said meat or lard will be allowed to be yours, and that I hold same as part of the estate of the said late Perry Wilson. I do this to let you know my position in the matter.

"Yours very truly,
"Clifton L. Jarrell,
"Executor of Perry Wilson."

The next paper filed in the Orphans' Court, according to the order in which they appear in the record before us, is the following renunciation of the widow of the provision made for her in the will:

"In the matter of the estate of Perry Wilson, late of Queen Anne's County, Maryland, deceased, in the Orphans' Court for Queen Anne's County.

"I, Sarah Wilson, widow of Perry Wilson, late of Queen Anne's County, Maryland, deceased, do hereby renounce and quit all claim to any bequest or devise made to me by the last will of my husband, exhibited and proved according to law; and I elect to take in lieu thereof the share of the estate of my said husband

to which I am entitled as his widow under Chapter
325 of the laws of Maryland, nineteen hundred and
sixteen, and as set forth in Sections 1, 2, and 3 of
Article XLVI in Bagby's Annotated Code of Mary-
land, Volume four.

> "As witness my hand and seal this 2nd
> day of January, 1919.
>
> "Sarah Wilson.   (Seal)

"Test: Wm. Robt. Huey."

It appears that, prior to the filing of her renunciation, the
widow, after receiving the letter referred to from the execu-
tor, consulted counsel in regard to her rights in her husband's
property, and presented a petition to the Orphans' Court,
which was sworn to on the 21st of December, 1918, stating
that she had signed the "provisional agreement," dated the
23rd of July, 1918, which had been "filed in these proceed-
ings without her knowledge," and that, since the signing of
said agreement, she had received, on November 21, 1918, a
letter from the executor informing her that "she could not
have the articles provided for in said agreement," and pray-
ing the court to allow her to withdraw said agreement, but
that the Orphans' Court refused to permit the petition to be
filed or to take any action thereon. It also appears that she
filed, presumably on the same day she filed her renunciation
of the provisions made for her in the will, a petition to the
Orphans' Court, in which she stated she thereby retracted and
cancelled said agreement of July 23, 1918, and elected to
take, in lieu of the provisions made for her in the will of her
husband, the share of his estate to which she was entitled
under Chapter 325 of the Acts of 1916. Sometime there-
after, but exactly when the record does not show, the executor
filed a petition in the Orphans' Court setting out that prior
to the filing of the will for probate the widow had signed the
paper of July 23rd, 1918, "whereby she agreed to accept con-
ditionally" the provisions made for her in the will; that on
January 7th, 1919, she had filed her renunciation of said pro-

visions and that, as he was anxious to close the estate as early
as possible, he prayed the court to pass an order declaring by
which of said papers he should be bound. Upon this petition
the Orphans' Court, on the 3rd of February, 1920, passed an
order requiring the widow to answer said petition, and to
show cause on or before February 9th, 1920, why she should
not be bound by the said agreement dated July 23rd, 1918,
and filed in said court July 30th, 1918, and directing that a
copy of said petition and order be served on the heirs at law
or children of the testator, and requiring them to answer said
petition and to show cause on or before February 9, 1920,
why the widow should be bound by her said paper, dated July
23rd, 1918. In obedience to said order the widow filed her
answer, which was sworn to on the 5th of February, 1920,
in which she stated that shortly after the death of the testator,
and at the request of the executor, she and some of the dis-
tributees named in the will met him and his counsel at the
residence of the decedent and that, after the will was read
counsel for the executor asked the "legatees and distributees
that were present" to sign a paper agreeing that the will
should be admitted to probate; that thereupon counsel for the
executor drew up a paper, which was signed by her and the
children present, whereupon said counsel asked her if she
would sign a paper agreeing to accept the provisions made in
the said will for her in lieu of dower or any other rights
allowed or provided by the laws of the State; "that she was
ignorant of her rights and did not understand what was meant
by such agreement and what its effect would be upon her
rights. But trusting entirely to the advice and statements
made by the said counsel she did consent to sign such a paper,
provided she was given the extra meat then in the meat house
on the farm where her husband died and where she was then
living, and the extra lard on said farm that might be remain-
ing after running the farm" for the year 1918; that said
counsel thereupon drew up a paper (the paper dated July
23rd, 1918) which she signed, but which was not signed by

any other person interested in the estate, and which she subsequently learned had been filed by said counsel in the Orphans' Court; that the executor subsequently informed her that she would not be allowed the meat and lard referred to in said paper, and later wrote her the letter to that effect, dated November 20th, 1918, and filed with her answer as an exhibit; that thereupon she sought advice as to her rights in her husband's property, and being informed and feeling that she had been misled by the representations made to her at the time of the signing of said paper, and that it was not an agreement because "it had no mutual binding force," and because she did not understand it was to be filed, she prepared a petition setting forth these facts and asking the Orphans' Court to allow her to withdraw said paper or agreement, to which petition she attached the said letter from the executor, but that the court refused to accept her said petition or to permit it to be filed or take any action thereon; that subsequently, on the 7th of January, 1919, she filed in said court a paper renouncing all claims to any part of the bequests and devises made to her by the will of her husband, and electing to take in lieu thereof such interest in his estate as she might be entitled to, a copy of which renunciation and election was filed with her answer; that on July 7th, 1919, she also filed in said court a paper "whereby she retracted and cancelled" said "provisional agreement" signed by her on July 23rd, 1918; that said paper (dated July 23rd, 1918) was "not an agreement and was only signed as a proposition which was never accepted by the executor or other parties in interest, but on the contrary was denied" and said "executor took over the meat and lard in question, had it duly appraised, sold and the proceeds reported" to the court, and distributed under its order as a part of the residuary estate of the testator, and that no part of the provisions made by said will for her had been paid to or received by her. The answer reserved to her the right, in the event that any controversy should arise as to any of the matters and facts presented in

the proceeding, to petition the court for issues to be made up and sent to a court of law for trial, and then prayed the court to pass an order granting her leave to withdraw said paper dated July 23rd, 1918, and declaring said paper to be void and of no effect, and for such further relief as she might be entitled to or require. The children of the testator, it would seem from the date of the affidavit thereto, did not answer the petition of the executor until June, 1920, and they asserted therein that the agreement dated July 23rd, 1918, was binding on the widow; that her renunciation of the provisions made for her in the will, filed on the 7th of January, 1919, was nugatory, and that if the widow did not get the extra meat and lard referred to in the paper dated July 23rd, 1918, it was not through their fault, as they were willing that the conditions of said agreement should be fulfilled. The answer then prayed that the prayer of the widow's answer that she be allowed to withdraw said paper be refused, and also prayed the court to pass an order directing the executor to proceed to distribute the proceeds of said estate in accordance with the provisions and terms of the will, and to disregard the renunciation of the widow filed January 7, 1919, as being null and void. Replications were filed by the executor and by the widow, and the widow filed in the court a petition proposing certain issues which she prayed the court to send to a court of law for trial and later filed, through her counsel, a petition praying that "plenary proceedings, in pursuance of Sections 254, 255 and 256 of Article 93" of the Code "be had on all matters relating to her rights in and to the estate" of Perry Wilson, deceased, "to the end that issues" might be framed by the court "to be transferred * * * to some court of law for trial," &c., but on the 27th of July, 1920, the majority of the Judges of the Orphans' Court passed the following order from which this appeal was taken by the widow, and in which the Chief Judge of that Court refused to unite for the reasons stated by him and set out in the record:

"Ordered this 27th day of July, 1920, upon the hearing of argument in the above entitled case, that Clifton L. Jarrell, executor, be and he is hereby directed to state an account of distribution in the estate of Perry Wilson, late of Queen Anne's County, deceased, under the terms of the last will and testament of the said Perry Wilson, deceased.

"John R. Benton,
"Chas. E. Cannon,
"Judges of the Orphans' Court
for Queen Anne's County."

Chapter 325 of the Acts of 1916 (Secs. 1, 2, 3 and 4 of Art. 46, vol. 4 of the Code), which specifies the share a widow is entitled to as an heir in the lands, &c., of her deceased husband who died testate, declares that "such share shall be subject to be barred by provisions in her favor by such will to the same extent and in the same manner as is provided by law with respect to barring dower by the acceptance of such testamentary provisions, and election not to accept said provisions shall be made in the same manner and within the same time as is so provided," and Section 302 of Article 93 of the Annotated Code provides: "A widow shall be barred of her right of dower in land or share in the personal estate by any such devise or bequest, unless within six months after the first grant of administration upon her husband's estate she shall deliver or transmit to the court or register of wills where administration has been granted a written renunciation in the following form or to the following effect," &c. Under these provisions of the law the widow had six months from the "grant of the administration" within which to renounce the provisions made for her in the will of the testator, and to elect to take in lieu thereof the share to which she was entitled under the Act of 1916, and as the administration upon her husband's estate was not granted until, or after, July 30th, 1918, it is clear that Sarah Wilson had the right to file her renunciation and election on the 7th of January, 1919,

unless she was estopped from doing so by some binding agreement to accept the provisions made for her in the will.

In the paper signed by the widow, dated July 23rd, 1918, and filed in the Orphans' Court, she agreed to accept the provisions made for her in the will, *provided* "I shall be given" the extra meat and lard therein referred to. If the meat and lard mentioned in the paper were a part of the provisions "which at the death of the decedent were laid up for the consumption of his family" and were not, under Section 222 of Article 93 of the Code, to be included in the inventory or sold by the executor, and the proviso in said paper could be construed to refer only to such interest or right as the widow had to use said meat and lard as a member of the testator's family, then the paper or alleged agreement on her part was without any consideration at all to support it. If, on the other hand, the meat and lard were such assets of the estate as were liable to be included in the inventory and sold by the executor, the title to them and the right of possession was vested in the executor (*Fowler* v. *Brady,* 110 Md. 204), who alone, if anyone, was in a position to carry out the provisions of said agreement. Assuming, as contended by the appellees, that said paper, when signed by the widow, contained all the requisites of a binding agreement on her part, it is alleged in her several petitions, and in her answer to the petition of the executor, and if not admitted is nowhere denied or questioned in any of the proceedings, that shortly after she signed the paper the executor notified her by letter and otherwise that she would not be allowed to have, and would not receive, any part of the meat and lard referred to therein, but that he would hold the same as a part of the estate of her husband. Under these circumstances the widow was entitled, upon the receipt of such notice from the executor, to rescind or put an end to her alleged agreement to accept the provisions of the will, and to file her renunciation of the provisions made for her therein and her election to take in lieu thereof the share she was entitled to under the law. In the case of

*McGrath* v. *Gegner,* 77 Md. 338, the Court said: "It is clear, therefore, that the weekly payments were meant and understood by the parties to be an essential part of the contract, and the plaintiff having failed time and again to make these payments according to the terms of the contract, the defendant had the right to put an end to the contract, and to refuse to deliver any more shells under it to the plaintiff." In the case of *Eckenrode* v. *Chemical Co. of Canton,* 55 Md. 51, Judge Miller, speaking for the Court, said: "We think it may now be regarded as settled law, both in England and in this country, that where there is a contract like the present for the manufacture and delivery of goods at a definite future time, and before the time of performance arrives the purchaser repudiates the contract and declares he will not be bound by it, or accept the goods if manufactured, and notifies the vendor to that effect, such refusal and notice is a breach of the contract which excuses the vendor from manufacturing the goods," and in 6 R. C. L., Sec. 314, it is said on page 930, "that one party may so wrongfully repudiate the contract as to authorize the other to renounce it and refuse to be longer bound by it. It is a party's conduct evincing an intent to be no longer bound by the contract that is equivalent to consent to a rescission."

As the widow filed in the Orphans' Court on January 7th, 1919, her formal renunciation of the provisions made for her in the will and her election to take in lieu thereof the share of the estate of the testator allowed her by law, and on the same day filed in said court a rescission of the alleged agreement of July 23rd, 1918, she was entitled to receive the share of the estate allowed her by Chapter 325 of the Act of 1916, and there was error in the order of the Orphans' Court directing a distribution of the estate in accordance with the terms of the will.

As the fact that the widow received from the executor the notice and letter referred to in her petitions and in her answer to the petition of the executor was not questioned or de-

nied in the answer of the children of the deceased, or in any of the proceedings, and the letter was before the Orphans' Court, there was no occasion for framing issues to be sent to a court of law for trial.

In the view we have taken of the case it is not necessary to consider the other allegations in the answer of the widow, or the other questions presented by the record, and for the reasons stated the order appealed from must be reversed, and the case remanded in order that an order may be passed in accordance with this opinion.

> *Order reversed and case remanded to the end that an order may be passed in accordance with the opinion of this Court, the costs to be paid out of the shares of the estate belonging to the children of the testator.*