## Joske Bros. v. W. S. Pleasants.

Delivered February 10, 1897.

**1. Building Contract—Breach—Defense not Pleaded.**

In a suit by the contractor for breach of a building contract, in being refused the work after his bid therefor was accepted, the petition did not disclose any requirement by defendant of a bond or any necessity therefor, and defendant pleaded only the general denial. Held, that defendant could not make available as a defense the fact of the requirement by him of a bond and plaintiff's failure to furnish it.

**2. Same—Same—Satisfactory Bond—Liability of Owners.**

Owners who accept a bid for the construction of a building on their property cannot avoid liability to the bidders for refusing to allow them to construct the building, on the ground that they did not tender a satisfactory bond, where a third party gave them a writing to the effect that he would give a bond for the faithful performance of the contract, if awarded to the bidders, and that in the meantime the writing should stand as a guaranty of faithful performance, and they had assured the bidders that they had all the guaranty they wanted.

**3. Evidence—Guaranty in Lieu of Bond.**

Evidence of a guaranty accepted in lieu of a bond is admissible to prove the acceptance of a bid submitted in response to an advertisement stating that a bond would be required of the successful bidder.

**4. Expert Evidence—Cost of Building.**

A contractor or builder may state what would have been the actual cost of the construction of a building according to certain plans and specifications, without stating the cost of each item of work and material entering into the construction; and if his testimony is deemed too general, the cost of each item may be inquired into upon his cross-examination.

**5. Charge of Court—Building Contract—Acceptance of Bid.**

An instruction in an action by a building contractor for a breach of the contract, that if plaintiff's bid was not accepted by the owners, or if plaintiff failed to comply with the terms of the bid for the erection of the building, or did not offer to comply with such terms, the jury should find for defendants, is not subject to the criticism that it authorizes a finding for plaintiff (although his bid may not have been accepted) if the jury believe that he offered to comply with the terms thereof, where in the preceding paragraph the jury were expressly required to find that the bid was accepted before giving the plaintiff their verdict.

**6. Measure of Damages—Breach of Building Contract.**

The measure of damages for the refusal of an owner to allow a building contractor to perform his contract, is the difference between the contract price and the actual cost of construction in the manner prescribed by the contract, less the value of the contractor's time that would have been employed in the performance of the contract, if he found other employment in which his time was equally or more valuable; and the damages so ascertained are not subject to deduction on account of the risk the contractor would have run in erecting the building, as that is necessarily included in such measure of damages.

**7. Damages—Breach of Building Contract—Mitigation.**

Relief from the worry and vexation involved in the performance of a building

contract cannot be considered as an element in mitigation of the damages for breach of the contract by the owner,—at least in the absence of evidence that the contractor would have suffered from such source if he had been allowed to perform the contract.

APPEAL from Bexar. Tried below before Hon. J. L. CAMP.

*Franklin & Cobbs*, for appellants.—1. The court erred in permitting the introduction of the letter of September 30, 1887, from Martin & Schryver to Joske Bros., over the objection of appellants thereto. (1) There are no allegations in plaintiff's petition authorizing the introduction of same. (2) The instrument offered is not, and does not purport to be, a bond of plaintiff or his obligation. (3) The said instrument does not purport to be a bond or obligation with reference to the bid or contract in issue in this suit, nor with reference to any other bid or contract such as is alleged in plaintiff's petition. (4) The instrument offered in evidence is a conditional obligation, and not a positive bond or obligation guaranteeing plaintiff's performance of his bid as alleged in plaintiff's petition, and therefore varies from the allegations in reference thereto in plaintiff's petition contained. (5) The instrument offered purports to be a contract between Martin & Schryver and defendants, to which plaintiff was neither a party nor privy. Mims v. Mitchell, 1 Texas, 442; Flores v. Redmond, 66 Texas, 115; Tinsley v. Penniman, 83 Texas, 544; O'Connor v. Silver, 26 Texas, 606; City of Laredo v. Russell, 56 Texas, 398; Wheeler v. Wheeler, 65 Texas, 573.

2. The court erred in permitting the witness Alvord to testify, over the objection of defendants, that, in his opinion or judgment, it would cost about $42,000 to erect the building for defendants. The testimony was merely the opinion of the witness, and he should have been required to have given the figures, instead of his opinion. Railway v. Wesch, 85 Texas, 593; Glass v. Wiles, 14 S. W. Rep., 225; Fuller v. Jackson, 52 N. W. Rep., 1075; Frankfort v. Railway, 33 N. Y. Supp., 36; Cargill v. Thompson, 59 N. W. Rep., 642; Haney v. Clark, 65 Texas, 96; Railway v. DeMilley, 60 Texas, 199; Railway v. Shirley, 45 Texas, 374; Shelley v. Austin, 74 Texas, 608; Mucci v. Houghton, 57 N. W. Rep., 305; Patterson Gas Co. v. Glenby, 54 N. Y. Supp., 119.

3. The charge gave to the jury a wrong measure of damages, and authorized them to allow plaintiff the difference between the actual cost of construction and the contract price, less the value of plaintiff's time which he would have had to have used in the erection of said building, and authorized no deduction for the value of the risk he would have run in erecting such building and carrying out the contract he may have entered into with reference to said erection, and no deduction for the value of the anxiety and worry from which he was relieved by not having to erect said building; and said charge excludes from the consideration of the jury the value of said risk and the value of said worry and anxiety, by stating specifically that the damages should be measured by the difference between the cost of construction and the amount

of the bid, less only the value of plaintiff's time, as stated in said charge. The making of one exception in said charge excluded from the jury the consideration of any other exceptions to the rule given by the court for measuring the damages. Railway v. Shirley, 45 Texas, 375; United States v. Speed, 8 Wall., 77; United States v. Behan, 110 U. S., 338; Hawley v. Corey, 33 Pac. Rep., 695.

*Perry J. Lewis* and *Upson, Bergstrom & Newton,* for appellee.—1. It was competent to prove by expert testimony what would have been the actual cost of the construction of the building. Defendants' objections went to the weight rather than to the admissibility of the evidence. Insurance Co. v. Pruitt, 65 Texas, 129; Glass v. Wiles, 14 S. W. Rep., 222; Railway v. Norfleet, 78 Texas, 325; Railway v. Thompson, 75 Texas, 503; Lawson Exp. Ev., pp. 70, 81; Wharton on Ev., sec. 452.

2. The measure contended for by appellants would have authorized a double deduction in favor of defendants, because plaintiff's anxiety, trouble and responsibility are necessary elements to be considered in determining the value of plaintiff's time, and by the court's charge the jury was authorized to deduct the value of plaintiff's time. Railway v. Hill, 63 Texas, 385; Mortgage Co. v. Waddington, 2 Texas Civ. App., 376; Long v. McCauley, 3 S. W. Rep., 689; Mills v. Paul, 30 S. W. Rep., 558-561; Railway v. Howard, 13 How., 305-343; Masterson v. Mayor, 7 Hill, 61, 42 Am. Dec., 38; Danforth v. Railway, 11 So. Rep., 60-62; Hammond v. Beeson, 20 S. W. Rep., 474-476; Bridge Co. v. O'Connor, 11 S. W. Rep., 18-23; Singleton v. Wilson, 2 S. W. Rep., 801; Gibney v. Turner, 12 S. W. Rep., 201; Ennis v. Publishing Co., 46 N. W. Rep., 314; 2 Sutherland on Damages, pp. 522, 525; 2 Sedgwick on Damages (8 ed.), secs. 613-618.

NEILL, ASSOCIATE JUSTICE.—W. S. Pleasants instituted this suit against Albert and Alexander Joske, composing the firm of Joske Bros., to recover $10,000 damages for an alleged breach of a building contract. It was alleged by plaintiff that defendants, through their architects, advertised for bids to erect a certain store building in the City of San Antonio, Texas, according to plans and specifications in possession of said architects; that on September 26, 1887, plaintiff, who was a contractor and builder, submitted in writing his bid, proposing to erect the building for $48,300; that on the next day the bids were opened and plaintiff's declared the lowest, and that on the 10th day of October, 1887, his said bid was duly accepted by defendants, and he was by them so informed. That on or about September 30, 1887, defendants demanded and received of plaintiff a good and sufficient bond and obligation, guaranteeing that plaintiff would comply with his said contract; with which obligation defendants expressed satisfaction, and at no time demanded of plaintiff further bond or guarantee. That the actual cost of constructing said building would not have exceeded $40,000; and that

plaintiff was at all times ready and willing to perform his contract, but that defendants, without cause, refused to permit plaintiff to perform his contract, and in January, 1888, let the contract for the construction of said building to persons other than plaintiff.

The defendants answered by general demurrer, and a general denial. The demurrer was not called to the court's attention nor acted upon.

The trial of the cause resulted in a verdict in favor of plaintiff for $7000, without interest, upon which the judgment was rendered from which we have this appeal.

*Conclusions of Fact.*—1. On the 10th day of September, 1887, the defendants, in the City of San Antonio, made the following advertisement:

"Notice to Contractors.

"Sealed proposals for the construction of a two story and basement store building for Messrs. Joske Brothers, owners, on corner of North Alamo and Commerce Streets, will be received at the office of the undersigned until 11 o'clock a. m., Monday, September 26, 1887. Each bid must be accompanied by a deposit of $500 in cash or its equivalent, to be forfeited in the event of failure to give a satisfactory bond. Plans and specifications can be seen at our office over Texas National Bank. The owners reserve the right to reject any and all bids.
(Signed)          "Wahrenberger &amp; Beckmann,<br>"Superintending Architects."

2. The plaintiff submitted, prior to the time of opening the bids, to defendants, through their said architects, the following sealed proposal for the construction of said building:

"To Messrs. Wahrenberger &amp; Beckmann, Architects:

"Gentlemen:—In accordance with your advertisement of September 10, 1887, inviting proposals for building Messrs. Joske Brothers' store house on corner of Alamo and Commerce Streets, I propose to furnish all labor and material to erect and complete the entire work, as per plans and specifications, for the sum of forty-eight thousand three hundred dollars, $48,300.
(Signed)          "W. S. Pleasants."

This proposal was accompanied by a certified check for $500, which was equivalent to a deposit of that amount in cash, and was accepted by appellants' architects as such.

3. This proposal, together with those of other bidders for the contract, was opened by the architects in the presence of Alex. Joske about the 27th day of September, 1887, and was the lowest proposal for the construction of the building, and it was accepted by Joske Brothers, and the contract for its construction awarded by them to the appellee.

4.  On September 30, 1887, Messrs. Martin & Schryver, at the instance of Joske Bros., executed the following instrument:

"Messrs. Joske Bros.,                              "September 30, 1887.
          "San Antonio, Texas.
"Gentlemen:—

"If the contract for erecting your store building on Alamo Street is awarded to Mr. W. S. Pleasants, and he signs contract with you for same, we will, upon my return to San Antonio about October 15th, sign Mr. Pleasants' bond to you for the faithful performance of the contract, and until said bond is signed this will stand as a guarantee that Mr. Pleasants will faithfully carry out the terms of said contract.

"Yours very truly,
          (Signed)          "Martin & Schryver."

After this instrument was delivered to defendants, they informed the plaintiff of its execution, and, upon his speaking to them in reference to making a bond, they indicated to him that it was unnecessary, and informed him that they had such guarantee of Martin & Schryver for the faithful performance of his contract, which was all the bond and obligation they desired.

5.  The plaintiff was at all times, after said contract was made, ready, willing and able to faithfully perform it, and indicated to defendants his desire to do so; but they failed and refused to permit him to construct the building.

6.  Had plaintiff been permitted to perform his contract, he would have constructed the building, in accordance with the plans and specifications, at a cost of not exceeding $41,300, and would have made, clear of all expenses, after discharging all obligations incurred, $7000. In which sum he was damaged by defendants' failure to allow its performance.

*Conclusions of Law.*—1.  That defendants objected to the introduction in evidence of the instrument copied in our fourth conclusion of fact, upon the following grounds: (1) There are no allegations in plaintiff's petition authorizing its introduction; (2) it is not and does not purport to be a bond or obligation or bond of plaintiff; (3) it does not purport to be a bond or obligation with reference to the bid or contract in issue, nor with reference to any other bid or contract alleged by plaintiff; (4) it is a conditional obligation, and not a positive bond guaranteeing plaintiff's performance of his alleged bid, and therefore varies from the allegations in reference thereto; and (5) it purports to be a contract between Martin & Schryver and defendants, to which plaintiff was neither a party nor privy.  Its introduction, over these objections, is made the basis for appellants' first assignment of error.

Special charge No. 2, the court's failure to give which is also assigned as error, points out substantially the same objections to the instrument

that were made to its introduction in evidence, and then asks the court to instruct the jury that, if they find from the evidence that Pleasants was required to give bond for the faithful performance of any contract he might enter into for building defendants' house, and that he had not signed such contract, and did not furnish such a bond, said letter from Martin & Shryver would not, under its terms, be such a bond, and to find for defendants. The failure of the court to instruct the jury, at defendants' request, that the undisputed evidence shows that, before the contract for building defendants' store was let, plaintiff was to execute a bond, and further shows that said bond was never executed or tendered by him, and therefore to find for defendants, is also assigned as error. As much of what we will have to say regarding any one of these assignments will be applicable to the other two, we will consider the three together.

The plaintiff's cause of action, as made by his pleadings, consists in the failure of defendants to permit him to perform a contract he had made with them for the construction of a certain building. He alleged that the contract was consummated by the acceptance, on the part of defendants, of a proposition made by him to them in response to their advertisement mentioned in our first conclusion of fact. The defendants' sole plea was a general denial; which only put in issue the execution of the contract, and, if made, its breach and the amount of damages flowing therefrom. To the issues as to whether the contract was entered into, and the quantum of damages, the evidence was confined; there being no controversy as to the breach of the contract, if the evidence established it was agreed upon between the parties.

It was not averred on the part of plaintiff that the execution by him of a bond was essential to constitute the contract. If a bond was necessary to complete the contract, such fact, and the failure of plaintiff to make a satisfactory bond, should have been specially plead as a defense. There was nothing in the transaction as plead by the plaintiff, nor in the evidence adduced, showing that a bond was a prerequisite to the acceptance of plaintiff's offer to construct the building. True, the notice to contractors required each bid to be accompanied by a deposit of $500 in cash or its equivalent, to be forfeited in the event of the failure of the bidder to give a satisfactory bond. The condition of the bond is not mentioned, and no one could anticipate and say what character of bond would be satisfactory. That was, perhaps, solely to be determined by defendants or their architects. It was certainly not intended to require a bond from any bidder, save the one whose bid should be accepted; for it could not have been contemplated that a bidder whose proposition should be rejected would forfeit $500 upon the failure to give a satisfactory bond. So it may be safely said that only he to whom the contract should be awarded, could be required to give the bond. The requisition by defendants of such bond of the bidder would be irrefragible evidence of the acceptance of his bid.

Therefore, for defendants to have plead as a defense plaintiff's failure

to give the required bond, would have been tantamount to an admission that they had accepted the plaintiff's proposition to construct the building. They preferred to put in issue the acceptance of the bid, to making such concession. The issue thus made was, upon sufficient evidence to support the verdict, determined by the jury in favor of the plaintiff, and, having been so determined, the defendants should not be allowed now to hide themselves behind an issue they dodged in their pleadings.

The minds of the parties came together in agreement when the plaintiff's bid was accepted by the defendants. They could not, after such acceptance, avoid their liability on the contract by failing to demand of plaintiff a satisfactory bond. They could demand it or not just as they pleased. The bond would have been for their protection; if they chose to waive it, the contract was complete without it, and plaintiff could not be deprived of its benefits without his consent, or some act of his own. Had the defendants informed plaintiff of the kind and character of bond that would be satisfactory to them, and requested him to make it before entering upon his undertaking to construct the building in pursuance of the contract, and he had refused, his contract might have been forfeited at the option of defendants, and the measure of damages thereby sustained by them determined and liquidated by the $500 check deposited to secure the execution of such bond.

As stated, the issue made by the pleadings and evidence was, whether plaintiff's bid was accepted. Upon this issue A. C. Schryver, of the firm of Martin & Schryver, testified that on about September 30, 1887, while in New York City, Albert Joske, of Joske Bros., informed him that Pleasants' bid was the lowest, and told him that a bond was all that was wanted, and that if it could be arranged, the contract would be given to plaintiff; that he informed Joske that his firm would sign the bond, and that he was asked by Mr. Joske to meet him next morning and close the matter; that next morning he met him at the appointed place, and witness wrote the letter in question and gave it to Joske, who read it and expressed himself satisfied with it, and that witness had not seen the letter since that time. Afterwards, when in San Antonio, Pleasants spoke to Joske about making the bond, and was informed by him that he had Martin & Schryver's guaranty, which was all he wanted. In connection with the facts accompanying the execution of the letter, and Joske's reference to it afterwards as a sufficient guaranty, we believe the instrument was admissible as evidence of defendants' acceptance of plaintiff's bid. This evidence and the other testimony upon that issue was, as we have found, sufficient to establish the affirmative of that issue.

If, then, the contract, being awarded to Pleasants, was not signed by him, so as to charge Martin & Schryver with the execution of his bond, who is to blame for it except the defendants? The contract was complete upon the acceptance of Pleasants' proposition, and if defendants wanted security for its performance, they had a guaranty for such security in the letter of Martin & Schryver, and could have obtained it

upon drawing up a formal contract and allowing plaintiff to sign it. That they did not do this is their own fault, the consequences of which they cannot avoid.

Even if a bond was a necessary condition to the consummation of the contract, the acceptance by defendants of the guaranty contained in the letter of Martin & Schryver, and expressing themselves to plaintiff as satisfied with it, and not requiring a further bond, would meet such condition. To bind plaintiff to a faithful performance of his contract, a bond was not necessary; for upon making it, the law held him to its faithful performance. So, whatever might be the legal effect of the letter of Martin & Schryver, if the defendants accepted it, and took it as a sufficient bond, declaring they were satisfied with it, when they could have obtained a complete guaranty for the plaintiff's performance of his contract, they should not be heard to say that the instrument was not such a bond as was required. We conclude, therefore, that none of these assignments referred is well taken.

2. The second assignment of error is as follows: "The court erred in permitting plaintiff to testify that in his opinion or judgment he would have made at least $8000 on the contract for erecting the building for defendants, if defendants had permitted him to erect said building under his bid for the erection of same, over objections of defendants, viz: That the answers of said witnesses were but the opinion or conclusion of the witness, and he should not be permitted to state generally what the building would have cost from the plans and specifications, but should be required to state the actual cost of each item of construction."

We are not able to find in the record any such testimony as is complained of in this assignment. It is not contained in defendants' bill of exceptions No. 1, copied in their brief in the statement under the assignment, nor does the assignment make any reference to such bill of exceptions. It shows that the plaintiff testified that the actual cost of the construction of the building according to the plans and specifications would have been between $38,000 and $39,000. If the assignment referred to this testimony, we should say that it was admissible evidence. If it was deemed too general, the defendants, upon cross-examination, could have required the witness to state the actual cost of each item of construction.

3. In the third assignment it is claimed that it was error to permit the witness Alvord to testify, over objection of defendants, that, in his opinion or judgment, it would cost about $42,000 to erect the building —the objections being, that the testimony was merely the opinion of the witness, and he should have been required to have given the figures, instead of his opinion. The witness was a contractor and builder, and as such had special knowledge as to the costs of constructing buildings, and having seen the plans and specifications could, as an expert, testify what would have been the actual cost of its construction. Besides, after the testimony had been objected to by defendants on the grounds

stated, they on cross-examination drew from the witness that the building could have been put up for $42,000, and he testified that he had made this estimate from determining what would be the cost of each item in its construction, and finding the total costs by adding the costs of the several items.  We believe the evidence complained of was properly admitted.

4.  So much of the fourth special charge as contained correct principles of law applicable to the case made by the pleadings and evidence was embodied in the instructions given by the court.  Therefore its refusal was not error.

5.  In its charge the court instructed the jury as follows:  "If, however, you find from the testimony that plaintiff's bid or proposal was not accepted by defendants, or that plaintiff did not furnish to defendants a good and sufficient obligation, guaranteeing that plaintiff would comply with his bid and proposal for the erection of said building, or if you find that such obligation, if any, was not satisfactory to said defendants, and was not accepted by them, or that if plaintiff failed to comply with the terms of his said bid and proposal for the erection of said building, or did not offer to comply with such terms, or if you should find from the testimony that plaintiff could not have constructed said building, in accordance with the plans and specifications, for a less sum than he proposed to construct the same for, you will find for the defendants."  This part of the charge is assigned as error, upon the ground that "it authorizes the jury to find for the plaintiff, although his bid might not have been accepted, if the jury believed that plaintiff offered to comply with the terms thereof."

There is no such authorization in the charge.  In the preceding paragraph of the charge, which is the only part of it which authorizes a verdict for plaintiff, the jury were required to find from the testimony, before they could return a verdict in his favor, that plaintiff's bid or proposal for the erection of the building was the lowest bid, and that the same was accepted by the defendants; and to find, also, if defendants required plaintiff to furnish a good and sufficient bond or obligation guaranteeing his compliance with his bid and proposal, that such bond or obligation was furnished defendants, and was satisfactory to them.  Not only this, but before they could return a verdict for plaintiff they had to further find that the plaintiff complied or offered to comply with all the terms of his bid and proposal, and that he could have constructed said building in accordance with the plans and specifications for a less sum than the amount proposed in his bid.

Construe these paragraphs together, as they should be, and the alleged defect in the part of the charge quoted cannot be tortured out of it.  If there is any defect in the part of the charge complained of, in our opinion, it is in being too favorable to defendants; for, though some of them were not made by the pleadings, it submitted all possible defensive issues that could be extracted from the testimony developed

upon the trial, and all of them the jury were required to find against defendants, before they could find for the plaintiff.

6.  Upon the measure of damages the court instructed the jury as follows:  "If you find for the plaintiff under the foregoing instructions, then you will, in measuring the damages, if any you find he has sustained, allow him the difference between what he contracted or proposed to construct said building for and the actual amount it would have cost him to erect said building in accordance with the plans and specifications, but from said difference you should deduct the reasonable value of plaintiff's time which he would have used in the erection of said building."   This part of the charge is objected to in the tenth assignment of error, upon the ground that it "authorizes no deduction for the value of the risk plaintiff would have run in erecting such building and carrying out the contract he may have entered into with reference to said erection, and no deduction for the anxiety and worry from which he was relieved by not having to erect said building."

As expressive of their views as to the correct measure of damages, defendants' counsel requested the following charge:  "Should you find for the plaintiff herein, the measure of damages will be the difference between the amount of his bid and the actual amount it would have cost him to erect said building according to the plans and specifications, but from said difference you should deduct the reasonable value of the risk of erecting said building and likewise the value of plaintiff's time, if any, which he would have used in the erection of said building, and which he did not use therein by reason of his non-erection of said building, and should likewise make all allowance for his relief from the anxiety and trouble, if any, which would have been attendant upon the erection of said building by him under his said bid,"—the failure to give which is also assigned as error.   As these assignments involve the same questions they will be considered together.

The allowance of profits, when not excluded as unnatural or remote, is wholly a question of the certainty of proof, and whenever there is a breach of contract, the gain prevented, if provable, may be recovered. The benefits which would have accrued to the plaintiff from a contract broken by the defendant may be recovered, though they are in a certain sense contingent.   The plaintiff must prove the benefit that would have been secured, for the jury cannot be asked to guess; but having made it appear reasonably certain that he would have obtained a benefit, the plaintiff is entitled to recover it.   Sedgwick on Damages, secs. 174, 192.

"The rule that damages which are uncertain or contingent cannot be recovered does not embrace an uncertainty as to the value of the benefit or gain to be derived from the performance of the contract, but an uncertainty or contingency as to whether such gain or benefit would be derived at all.   It only applies to such damages as are not the certain result of the breach, and not to such as are the certain result, but uncer-

tain in amount." Frazer v. Mining Co., 9 Texas Civ. App., 210, 28 S. W. Rep., 714, and authorities there cited.

The damages flowing from the breach of a building contract have never, in any well considered case, been held too remote or uncertain to be recovered. If either party breaks such a contract, the other is entitled to recover what he would have made or saved had it been performed. And in a case like the one under consideration, the measure of damages is the difference between the contract price and the actual cost of construction according to the contract, less the value of the contractor's time (if he found other employment in which his time was equally or more valuable) that would have been employed in the performance of the contract. In this the risk that would have been incurred by the builder is necessarily included; for if under this measure of damages, the contractor would have made a certain profit, any loss that might have reasonably ensued from an incidental risk could not have been a part of his gain.

All the risk incurred was estimated, considered and guarded against by the plaintiff in his bid, and after having been so estimated and considered, to have again deducted the "value of such risk" would have been to make a double deduction for such risk. And there being no evidence tending to show that the risk would have been greater than was provided against, there was nothing to warrant the court in giving the charge asked on that point. The defendants, having prevented the plaintiff from performing his contract, when, if performed, it would have appeared what would have ensued from assumed risks, have no right to have a jury speculate upon what possibly might have been encountered from such risks had the contract been executed.

There is no evidence in the record that plaintiff would have suffered any anxiety or trouble if defendants had permitted him to construct the building, or that he gained any consolation or relief from their breach of their agreement, and the court could not, therefore, submit such an issue, even if, under the law, relief from anxiety and vexation could be considered as an element in mitigation of damages. However, the writer does not believe that the relief from anxiety and worry that may have been incurred by a builder from not having been permitted to perform his contract can be considered in mitigation of damages in a suit brought by him for its breach. Such consideration would inject a question and beget others too uncertain and remote for determination. One man might fret and fume and worry in performing a contract, while another might carry it out with delectation. To determine whether a contractor would have been vexed and worried, his disposition and temperament would have to be inquired into and considered by the jury. The worry and vexation encountered in the construction of a building might be offset by pleasure and delight. Must a jury then determine the value of the worry and of the pleasure given the contractor, weigh and offset the one against the other, before they can determine the damages he has sustained? One might worry more over not being permitted

to perform his contract than he would, had he been allowed to perform it. If the worry and vexation incurred from the one is to be considered, why not consider and offset it by the other? A man, according to his nature, can worry and vex himself over his contract as he may, yet, if in his vexation and worry he injures no one, his obligation, or the obligation of others to him, is not increased, diminished or in anywise affected by it. The worry and vexation are his, and concern or affect no one else. And, in the opinion of the writer, the cases apparently in conflict with these views had their origin in dicta, and are unsupported by reason or principle. In our opinion, the part of the charge complained of is correct, and the special charge asked was properly refused.

Our conclusions of fact dispose of the assignments which complain of the insufficiency of the evidence, adversely to defendants.

There is no error in the judgment, and it is affirmed.

*Affirmed.*

Writ of error refused.