## EUREKA PRODUCING CO. v. HOYT.*
(No. 10692.)

(Court of Civil Appeals of Texas. Fort Worth. June 7, 1924. Rehearing Denied Oct. 18, 1924.)

1. **Sales** ⊂⊃418(2)—**Measure of damages for seller's breach of contract ordinarily difference between market and contract prices.**

For seller's breach of contract to deliver goods, measure of damages is ordinarily difference between market price at time and place of delivery and contract price.

2. **Sales** ⊂⊃418(15)—**Damages for breach of contract to deliver goods held, under circumstances, to include profit lost to purchaser.**

Damages for breach of contract to deliver damaged oil well pipe, where seller knew that buyer was in business of buying, rethreading, and selling same, *held* to include loss of profit thereon.

3. **Damages** ⊂⊃6 — **Unrecoverable contingent damages for breach of contract held not to include those certain to result, but uncertain in amount.**

Rule that damages which are uncertain or contingent cannot be recovered, applies only to damages that are not certain result of breach of contract, and not to those where only amount is uncertain.

4. **Tender** ⊂⊃15(6) — **Objection that certified check not legal tender waived by refusal of tender on other grounds.**

Where tender of certified check was refused on grounds other than that it was not legal tender, such objection was waived.

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction December 20, 1924.

**5. Appeal and error ⬚230—Objection to tender untenable because of failure to raise at time when evidence offered.**

Objection that tender by buyer was not good because made after seller informed him that further delivery of goods under the contract would not be made, *held* untenable where not raised when evidence of tender was offered.

**6. Appeal and error ⬚1050(1)—Not prejudicial to admit testimony of buyer, suing for failure to deliver goods, that he already had orders for them at certain prices, in view of other testimony.**

Where buyer suing for breach of contract to deliver goods, testified as to their market value, *held* not prejudicial error to admit his further testimony that he had orders for them at certain prices, which were not higher than market price previously testified to.

**7. Evidence ⬚317(6) — Testimony that witness had contracted sale of article at certain price not hearsay.**

Testimony that witness had contracted for sale of article at certain price, *held* not objectionable as hearsay.

**8. Appeal and error ⬚1067—Refusal of special charge as to whether or not buyer accepted offer by tendering price, held not prejudicial.**

Where evidence showed undisputed offer to sell goods and acceptance thereof, refusal of special charge to find whether buyer accepted by tendering money in reasonable time was not prejudicial.

**9. Appeal and error ⬚1067—In buyer's action for breach of contract to deliver goods, refusal of charge submitting question of unreasonable delay in payment held not prejudicial.**

Where evidence did not show that buyer's tender of balance of purchase price of goods was unreasonably delayed, refusal of charge submitting issue of such delay *held* not prejudicial.

**10. Sales ⬚417—In buyer's action for failure to deliver goods, evidence of damage held to support verdict for plaintiff.**

In buyer's action for damages for failure to deliver certain damaged oil pipe, where an element of damage was loss of buyer's profit in rethreading and reselling same, evidence of damage *held* to support verdict for plaintiff.

Appeal from District Court, Young County; H. R. Wilson, Judge.

Action by L. V. Hoyt against the Eureka Producing Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, for appellant.

Marshall & King, of Graham, and Fred Pearce, of Coleman, for appellee.

CONNER, C. J. This is an appeal from a judgment in appellee's favor for $1,185.35 as damages for a failure on appellant's part to deliver certain damaged oil well casing which appellee had purchased.

Appellee, plaintiff below, alleged, in substance, that about December 10, 1921, he entered into a contract with the defendant corporation acting through its agent, E. W. Bissett, for the purchase of certain oil well casing and supply pipe; that said pipe was of various sizes ranging from 5⅗₁₆ to 12½ inches amounting in all to about 4,000 feet; that at the same time he also purchased 2,000 feet of first class 5⅗₁₆-inch casing, totalling in all about 6,140 feet; that for the whole appellee was to pay and defendant agreed to accept $2,000, of which amount plaintiff paid $1,350, leaving a balance of $650 due on the contract, which amount had been duly tendered to the defendant. The plaintiff further alleged, in substance, that at the time he was engaged in the business of rethreading damaged pipe and oil well casing, and thereafter selling the same, and that the purchase of the damaged pipe mentioned was for the purpose of rethreading and reselling it, of which fact the defendant well knew; that defendant had refused to deliver some 4,000 feet of the damaged pipe mentioned, which, had it been delivered as contracted for, plaintiff could and would have rethreaded the same and sold it at a profit of $2,500, and he claimed he was damaged in that amount and prayed for its recovery.

The defendant answered, so far as necessary to state, by a general demurrer, a general denial, and specially to the effect that the contract of sale alleged was conditioned upon the payment in cash by the plaintiff of $2,000.; that, of the pipe contracted for, the defendant had delivered to the plaintiff 2,289 feet of the 5⅗₁₆-inch casing at the agreed price of 50 cents a foot; that the remainder of the casing defendant agreed to hold for the plaintiff for three days, at the end of which time plaintiff was to pay for the same; that plaintiff did not have the money within the three days, and was notified in due course by the defendant that since the time limit for payment had expired he could not have the casing. Defendant alleged that the time of payment was of the essence of the contract, of which fact plaintiff well knew, or if not, plaintiff had not tendered the balance due on such contract within a reasonable time.

The case was submitted to a jury on special issues, the answers to which were, in substance, that the plaintiff and defendant had, on December 10, 1921, entered into an agreement whereby the plaintiff purchased the casing set forth in his petition from the defendant at the price of $2,000; that the agreement did not specify that it was to be paid for within three days from its date; that defendant had not delivered to the plaintiff the casing agreed upon, the reasonable market value of which, after the same had been rethreaded, was $2,775, and that

---

⬚For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the difference in the agreed purchase price and its reasonable market value after the same was rethreaded was $1,408.50, from which sum, in entering the judgment, the court deducted the sum of $223.45, which the plaintiff had instructed the jury to find for defendant upon a cross-plea.

[1] Appellant assigns error to the action of the court in overruling its general demurrer. It is insisted that an improper measure of damages is alleged. It is true that ordinarily the measure of damages for a breach of contract is the natural, direct, and approximate loss occasioned by such breach, and that, in an ordinary case of simple failure to deliver goods contracted for, the legal measure would be the difference between the market price of the goods at the time and place where they were to be delivered and the amount paid, or to be paid, therefor, by the terms of the contract of sale.

[2, 3] But it is further true that special damages, as profits, are also sometimes recoverable. If the special circumstances under which the contract was actually made was communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances, so known and communicated. See Jones v. George, 61 Tex. 345, 48 Am. Rep. 280; Pacific Express Co. v. Darnell Bros., 62 Tex. 639. The plaintiff's petition, as stated, alleged, in effect, that the plaintiff was engaged in the business of buying damaged oil well pipe and rethreading and selling the same, and this fact was well known and understood by the defendant at the time of the contract alleged. Plaintiff further alleged that had the pipe been delivered as contracted for he could and would have rethreaded the same and sold it at a profit specified. The rule that damages which are uncertain or contingent cannot be recovered does not embrace an uncertainty as to the value of the benefit or gain to be derived from the performance of the contract, but an uncertainty or contingency as to whether such a gain or benefit would be derived at all. It only applies to such damages as are not the certain result of the breach, and not to such as are the certain result, but uncertain in amount. Fraser v. Echo Mining Co., 9 Tex. Civ. App. 210, 28 S. W. 714, and authorities there cited; Joske v. Pleasants, 15 Tex. Civ. App. 433, 39 S. W. 586. We overrule the general demurrer.

[4] We likewise overrule the exception to the court's ruling admitting the testimony of plaintiff to the effect that he had at the time and place indicated tendered to appellant's selling agent the balance of $650 due upon the contract of sale. Appellee testified and the jury found to the effect that, at the time of the sale in question, no time limit was fixed as to the payment of the balance due for the pipe, and appellee testified further that at the time of sale the selling agent agreed that he might take 2,000 feet of the pipe, which he did, and, as soon as he could, sell it and with the proceeds pay the remainder, expressing a desire to have it paid promptly; that soon thereafter, a week or two, he procured a certified check for $650 and tendered it to the agent, and that the tender was refused. The specific objection to this testimony was that "a certified check is not a tender, and he had pleaded a tender of the money." Appellee specifically testified that no such objection was made at the time of the tender of the certified check, and there is no suggestion that it was not perfectly good, and in such cases the ruling is that the objection that it is not paid in money is waived if the tender of the check is refused, not on the ground that it is not legal tender, but upon some other ground. See 38 Cyc. 146, par. 3, and authorities there cited.

[5] The further objection made, to the effect that the tender was not good because made after plaintiff had been expressly informed that further delivery of the pipe would not be made, is untenable for the reason that this particular objection was not made, as shown by the bill of exception, at the time the evidence of the tender was admitted by the court.

[6] Appellant in its third proposition urges that the court erred in permitting the plaintiff to testify over the objection of the defendant as to what he could have sold the casing for, and that he had a purchaser for it and a resale made, "because such proof would not be the measure of damages, the proper measure of damages being the difference in the market value of the casing at the time and place and the original cost of the casing, including the purchase price and rethreading," etc. Appellee testified, giving the number of joints of the different classes of pipe described in his petition that had not been delivered, and then said:

"I know the value of the casing at that time after it had been rethreaded. I was in the business of repairing and selling casing and kept up with the market price at that place and at that time."

He then further stated the value of the several classes of pipe in question, and on further examination stated that he could have sold the pipe at the prices stated; that he had orders from parties named for parts; that he had contracted some of it at prices stated. The qualification of the witness to give his opinion as to market values of the pipe as he did was not questioned, and we see nothing prejudicial in his being allowed to further state, in connection with the statement of the market prices, the fact that he had sold and had offers at the prices

stated, it not appearing that the contracts of sales made by him, and the offers for parts made to him, were for sums greater than the market prices as stated by the witness or would tend to augment the verdict of the jury.

[7] The further objection that the testimony was hearsay is overruled for the reasons stated and for the further reason that we think it merely went to the competency of the witness to give his opinion of the market values. See Houston Packing Co. v. Griffith (Tex. Civ. App.) 144 S. W. 1139; Bullard v. Stewart, 46 Tex. Civ. App. 49, 102 S. W. 174; Jones, Blue Book on Evidence, vol. 3, § 584.

[8] Defendant objected to the court's charge "as a whole because same nowhere presents to the jury the matter of reasonable time for the acceptance of the offer;" and further requested a special charge "to find from the evidence whether or not the plaintiff accepted the proposition by tendering the money to the defendant in a reasonable time." We fail to find any prejudicial error in the court's charge of the character stated in the objection, or in the court's ruling in refusing the special charge.

There is no dispute in the evidence to the effect that the agent of appellant offered to sell to the appellee the pipe described in the petition for the sum of $2,000, and that appellee accepted the offer, paid thereon the sum of $1,350, and received part of the pipe. We can make nothing of this testimony other than that the offer was accepted; and the fact that appellee tendered the remainder of the purchase money some week or so after his first payment was made, does not make it less so.

[9] We will notice one other objection to the court's refusal to give special charges. It is urged in appellant's eleventh proposition that the court erred in refusing to give the following special charge:

"Find what would have been a reasonable time for the plaintiff to have paid the purchase price, under the conditions of the agreement. In answering this issue you will take into consideration the conditions that existed in the oil fields at South Bend at the time of this purported offer and acceptance."

Appellant's agent who made the sale in question testified, in effect, that the sale was for cash; that the total purchase money was to be paid within three days after the making of the agreement. Appellee, on the other hand, testified that there was no time limit as to the payment, and the jury so found; appellee further testifying, and this is not disputed, that his payment of the $1,350 on the contract was on the fourth day after the agreement was made, and that it was agreed at the time of the contract that he should take a part of the pipe, sell it, and thus procure the money to complete payment; that he did this and tendered the balance a few

weeks after the making of the agreement. It is evident, therefore, that there is testimony to support the jury's finding against the contention that complete payment was to be made within three days. Appellee testified, in substance, that he met Mr. Bissett, appellant's selling agent, on the morning of the 5th of January, and told him that a Mr. Duffy would be in that night for the check (for the balance of the purchase money), and Mr. Bissett said that "'it was all off.' I said, 'What do you mean?' And he said, 'Bill Rhea came in last night and wanted to know who he sold it to,' and he told him, and he said, 'You know that personal matter between you and Bill Rhea,' and he said, 'Load that stuff and ship it to Wichita Falls.' I said, 'I don't think that is right; I bought that and have sold it.'"

Bissett in testifying did not deny this conversation, and it thus appears that the reason given for the refusal to let appellee have the pipe was not because the payment had not theretofore been made, but because a Mr. Rhea, presumably some one of authority in the appellant company, had told him to ship it to Wichita Falls. There is no evidence tending to show that the undelivered pipe had in fact been sold or that offers therefor had been made, nor does appellant in its brief point out any evidence tending to show any peculiar condition in the oil field at the time and place which would constitute time of the essence of the contract, or even show that appellee's tender of the balance of the purchase money was unreasonably delayed. We accordingly rule that there was no prejudicial error in the action of the court in the particular specified.

Other objections to the charge and to the court's refusal to submit other requested issues will not be noticed, as we find nothing therein that would, as we think, require a reversal or be important to discuss.

[10] Appellant's concluding contention is that the court erred in rendering judgment for the plaintiff as set forth:

"Because the facts proven will not support said verdict in this, to wit: The plaintiff testified that part of the casing only was sold at a profit. The petition attempted to allege special damages, it was necessary to show just what he sold each class of casing for and what his profits thereon would have been, and the evidence is insufficient to show that it was all sold or what the profits would have been on that which was not sold, and what profits were made on that which was sold; and because the proper measure of damages was the difference between the price at which he bought it and the general market value thereof after the same was rethreaded for sale, and the evidence does not establish what this would have been."

Appellant at no time has contended, either in pleading or brief, that the measure of damages to be applied in this case was the difference in the price appellee agreed to give therefor and the market price of the pipe in

its damaged condition; on the contrary, the whole case has proceeded on the theory, as appears in the quotation made from the proposition we are now discussing, that the proper measure of damages was the difference between the price at which appellee bought it and the general market value after the same was "rethreaded" for sale. The evidence undoubtedly was to the effect that it was in contemplation of both parties at the time of the sale that appellee was to rethread it and sell it after such rethreading. The price at which it was bought is stated in the evidence and undisputed. Appellee testified as to the market value of the pipe in its rethreaded condition, and the jury have found the difference between these sums, and appellant has not questioned the accuracy of the jury's finding in this respect. Of course, the cost to appellee of rethreading the pipe is to be deducted. The specific cost of rethreading each class of pipe seems not to have been put in question by cross-examination of appellee or otherwise. Appellee testified in a general way that "we get $1.75 per joint for rethreading that 5⅜-inch casing"; that it cost him about $12 to have the pipe hauled; that he would have made about 33⅓ per centage profit per foot on the 15½-inch casing, and on the 12½-inch casing he estimated his total profit at $2,700. He testified:

"The way I arrived at the $2,700 damages I claim is that I estimated what it would have cost me to haul that stuff to the shop and what it would have cost me to rethread it and deliver it and I figured $1,000 would cover the whole thing, and that left a balance of about $2,700. That is the way I arrived at it."

Appellant seems to have accepted the estimates of the witness as so given by not having, on cross-examination or otherwise, sought to have him give a more accurate statement of the cost of the hauls, deliveries, and of rethreading the pipe. And we are of opinion that we would not be justified in reversing the judgment in order to give appellant an opportunity to disprove, if he could, the accuracy of appellee's estimates.

We accordingly, for the reasons stated, overrule all assignments of error and propositions, and affirm the judgment.

BUCK, J., not sitting.